# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3142

_____

United States of America,

    Appellee,

  v.

Joshua T. Payne,

    Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Missouri.
\*
\*
\*

_____

Submitted: May 13, 2008
Filed: July 25, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

  Joshua T. Payne was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Payne appeals from the district court's[1] denial of his motion to suppress, arguing that the traffic stop was not supported by reasonable suspicion or probable cause and that the encounter was extended beyond what was reasonably necessary. We affirm.

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge.

## I. Background

On November 28, 2005, at approximately 4:30 a.m., officers Luke Lewis and Jeff Crow of the Independence, Missouri, Police Department were responding to a residential alarm call on a dead-end street in an area known for prowlers, vandalism, and stolen autos. After concluding that the alarm had been accidentally tripped, the officers left the residence. Shortly thereafter, Officer Lewis observed a vehicle traveling toward the dead-end, and observed no front license plate on the vehicle. As the vehicle passed, Lewis turned his spotlight on the vehicle and one of the occupants covered his face. Lewis became suspicious of the vehicle because of the time of day, the occupants' conduct, and the area's reputation for criminal activity. After approximately thirty seconds, the vehicle reached the dead-end, turned around, and proceeded in the opposite direction down the street. Lewis followed the vehicle based upon his suspicion and his belief that the vehicle did not have a front license plate.

Lewis stopped the vehicle and initiated contact with Payne, its driver. In addition to Payne, there were three other occupants of the vehicle, one of which was the vehicle's owner. Officer Lewis asked Payne for his driver's license and registration. Payne provided a copy of the registration and stated his name, social security number, and birth date, but did not have his driver's license with him. Lewis then contacted the dispatcher and learned that Payne was known to be armed and dangerous and that he had a Missouri Uniform Law Enforcement System ("MULES") hit. Although the MULES system shut down before all the information was relayed, Lewis knew that a hit means that the suspect has a prior conviction, the suspect is on probation or parole, or that the suspect has an outstanding warrant. Lewis assumed that Payne had a warrant out for his arrest.[2] Lewis returned to Payne's vehicle and asked him to step out of the vehicle. As Payne exited the vehicle, Lewis observed a

---

[2]Lewis learned after Payne was detained that Payne had an outstanding warrant for failure to appear.

spring-loaded collapsible baton between the driver's door and the driver's seat and two 9mm magazines near the front edge of the driver's seat, leading him to believe that Payne might be armed and presently dangerous.

After Payne exited the vehicle, Lewis conducted a pat-down search, which revealed that Payne was wearing a shoulder holster designed to carry a handgun. Thereafter, Lewis returned to the vehicle, moved the driver's seat forward, and observed an unlatched gun case on the floor behind the driver's seat. Lewis opened the gun case, which contained two loaded semiautomatic handguns.

Payne was placed under arrest for being a felon in possession of a firearm and issued a citation for improper display of a license plate because the vehicle's front license plate was attached with wire to the passenger side of the grille.

## II. Analysis

When reviewing the denial of a motion to suppress evidence, we review legal conclusions *de novo* and factual findings for clear error. United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir. 2008). We affirm unless the denial of the motion "is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Stachowiak, 521 F.3d 852, 854 (8th Cir. 2008) (internal quotation omitted).

Payne argues that the initial stop of the vehicle violated the Fourth Amendment because Lewis did not have reasonable suspicion or probable cause. We disagree.

Because a vehicle stop constitutes a seizure under the Fourth Amendment, an officer must have at least articulable and reasonable suspicion that the vehicle or its occupants are involved in illegal activity before conducting a traffic stop. Id. at 855.

The observation of even a minor violation provides probable cause for a traffic stop, even if the traffic violation is a pretext for other investigation. Id.

When Officer Lewis pulled over the vehicle Payne was driving, he believed that the vehicle did not have a front license plate, in violation of state and local law.[3] See United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) ("Any traffic violation, however minor, provides probable cause for a traffic stop."). Because the vehicle actually did have a front license plate, Lewis's probable cause calculation was based on a mistake of fact. We conclude, however, that the mistake of fact was objectively reasonable. See United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005) ("[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one."). The vehicle's front license plate was not centered on the vehicle's front bumper in the usual manner and it was dark outside, making it difficult for Lewis to fully scan the vehicle for a front license plate. See United States v. Flores-Sandoval, 366 F.3d 961, 962-63 (8th Cir. 2004) (officer's mistaken belief that vehicle did not have front license plate was objectively reasonable under the circumstances). Indeed, Payne's reply brief concedes as much. Reply Br. at 10. Accordingly, the initial stop of the vehicle was supported by probable cause and therefore did not violate the Fourth Amendment.

Payne argues that even if the initial stop of the vehicle was proper, he was detained and questioned longer than what was reasonably necessary because the entire traffic stop took approximately thirty-nine minutes and because Lewis did not immediately verify whether the vehicle had a front license plate. We disagree.

---

[3]In his reply brief, Payne's argues that the location of the front license plate did not violate any state or local laws. Because this issue is not relevant to whether the initial stop of the vehicle was lawful or whether the traffic stop was unreasonably delayed, we do not address it.

After stopping a vehicle, an officer has the authority to ask the driver what his or her destination and purpose is, check the driver's license and registration, or request that the driver step out of the vehicle. United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). A traffic stop can last as long as reasonably necessary to conduct this routine investigation, conduct a criminal history search, and issue a citation. United States v. Jones, 269 F.3d 919, 924-25 (8th Cir. 2001). If this routine investigation raises the officer's suspicions and the officer has reasonable, articulable suspicion, the officer may expand the scope of the investigation. United States v. Allegree, 175 F.3d 648, 650 (8th Cir. 1999).

Officer Lewis's lawful stop entitled him to ask Payne for his license and registration. Lewis contacted the dispatcher with the information Payne provided and was informed that Payne was known to be armed and dangerous. See Jones, 269 F.3d at 924 (officer may conduct computer inquiries to confirm the validity of the driver's license and registration and may conduct computer searches to determine a driver's criminal history). Even without this information, though it certainly added to Lewis's suspicion, he was entitled to ask Payne to step out of the vehicle. See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977); Linkous, 285 F.3d at 720 (officer can expand the scope of the search if the totality of the circumstances create reasonable suspicion to do so). As Payne exited the vehicle, Lewis observed the spring-loaded collapsible baton and two pistol magazines in plain view near the driver seat. See United States v. Bynum, 508 F.3d 1134, 1137 (8th Cir. 2007) ("Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle."). This observation gave Lewis reasonable justification to suspect that Payne was armed and that he posed a serious and present danger to Lewis's safety, see Mimms, 434 U.S. at 111-12, entitling him to conduct a pat-down search of Payne, see id. (citing Terry v. Ohio, 392 U.S. 1), which ultimately led to the discovery of the gun case and the weapons contained therein. See United States v. Shranklen, 315 F.3d

959, 961 (8th Cir. 2003) (citing <u>Michigan v. Long</u>, 463 U.S. 1032 (1983) (frisk of passenger compartment of vehicle permitted if necessary to protect officer safety)).

In sum, we conclude that the traffic stop did not last longer than reasonably necessary.  Officer Lewis did not exceed the proper scope of the traffic stop, and he conducted each step of the investigation without undue delay.

The judgment is affirmed.

_____