# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3144

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　 *　District Court for the
　　　　　　　　　　　　　　　　　*　Western District of Missouri.
Renard T. Collier,　　　　　　　　*
　　　　　　　　　　　　　　　　　*　[UNPUBLISHED]
　　　　　　Appellant.　　　　　　 *

_____

Submitted: April 12, 2011
Filed: June 2, 2011

_____

Before WOLLMAN and MELLOY, Circuit Judges, and MILLER,[1] District Judge.

_____

PER CURIAM.

Renard Collier pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), reserving the right to appeal the district court's[2] denial of his motion to suppress evidence. On appeal, Collier renews his claim that the search that brought the evidence at issue to light violated the Fourth Amendment

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

and the evidence should therefore be suppressed. Concluding that the search was lawful, we affirm.

I.

On July 30, 2009, Sergeant Eric Stucker of the Kansas City Police Department (KCPD) worked an overnight patrol shift by himself. Shortly before midnight, he observed a car enter a parking lot of a gas station. He entered the car's license plate on the computer in his patrol car and learned that a male subject with an outstanding assault warrant was associated with it. He observed two occupants in the vehicle, a female driver and male passenger, and decided to initiate a traffic stop to determine whether the individual with the assault warrant was present. He activated the lights and sirens of his vehicle, at which point a video recorder on his dashboard automatically activated. As the car pulled to the side, Stucker saw the passenger "making overt actions . . . leaning toward his left-hand side and possibly leaning his seat further back." Tr. Mot. Suppress H'rg, at 7. In Stucker's experience, such actions were "consistent with concealing possibly contraband or concealing a weapon of some sort." Id. Stucker exited his patrol car and approached the vehicle on the passenger side. As he drew closer, the occupants came fully into view and Stucker recognized Collier, the passenger, whom he had previously arrested for a narcotics violation. At that time, he realized that the male associated with the warrant was not in the vehicle.

Stucker asked for and obtained the occupants' identification, then remained on the passenger side of the car while calling for backup on his radio. Another police officer arrived on the scene and stationed himself on the passenger side of the vehicle, while Stucker returned to his car to check the occupants' information on the police computer. He determined that neither Collier nor his female companion had outstanding warrants.

-2-

Stucker returned and instructed the driver to step out of the vehicle. The other officer remained on the passenger side as Stucker and the driver walked back toward his police car, whereupon he asked, "Who is [Collier] to you?" She indicated that he was a friend. When Stucker asked her if there was anything illegal in the vehicle, she responded that she was not aware of anything illegal. He asked to search the vehicle, to which she replied: "I'd rather you not." Tr. Mot. Suppress H'rg, at 10. He described the movements Collier had made as he first approached the vehicle and advised her to wait near the patrol car while he investigated further.

Stucker came up to the passenger side and instructed Collier to step out of the vehicle, explaining at the suppression hearing that "[i]t was my belief that there was a high probability that a weapon would be - was being concealed, and for officer safety reasons, for both the other officers and myself, I had him step out in order to perform a frisk for weapons." Tr. Mot. Suppress H'rg, at 12. Stucker had to repeat the instruction to exit the vehicle a number of times before Collier complied. Stucker handcuffed Collier and told him to spread his legs, at which point a nine millimeter pistol with sixteen rounds in the magazine fell out of Collier's pants. From the time Stucker initiated the stop to the time when the gun hit the ground, roughly five and a half minutes had passed. Stucker secured the pistol and continued the search, discovering approximately five grams of marijuana on Collier's person.

Collier was charged with being a felon in possession of a firearm and moved to suppress the gun. At the suppression hearing, the government played the video of the traffic stop recorded by the camera mounted in Stucker's police car. Stucker recounted the sequence of steps that led to the discovery of the gun. He testified that he believed that contraband or weapons may have been concealed in the car based on the following: his personal knowledge of Collier's prior narcotics violations; his understanding, buoyed by experience, that narcotics are often associated with weapons; and, in particular, his observations of Collier's movements on approaching the car. He indicated that he had frisked Collier for "officer safety reasons" to ensure

that he was not armed. The magistrate judge concluded that Stucker had a reasonable suspicion to frisk Collier and that his actions did not violate the Fourth Amendment. The district court adopted the magistrate judge's recommendation and report and denied the motion to suppress. Following the entry of Collier's conditional plea of guilty, the district court sentenced him to 30 months' imprisonment. This appeal followed.

II.

Collier argues that the district court erred in denying the motion to suppress the gun that dropped from his pants while Stucker frisked him. When reviewing the denial of a motion to suppress evidence, we review the legal conclusions *de novo* and the facts underlying that decision for clear error. United States v. Payne, 534 F.3d 948, 950 (8th Cir. 2001) (citation omitted).

Collier does not challenge the lawfulness of the initial traffic stop. He argues that once Stucker realized that the individual whose warrant was associated with the vehicle was not present, he lacked reasonable suspicion that criminal activity was afoot or that Collier posed a threat to officer safety. Thus, Collier maintains, Stucker had no basis to expand the scope of the stop and the ensuing detention and search that yielded the gun violated the Fourth Amendment.

An officer who makes a lawful stop of a vehicle is entitled to conduct an investigation reasonably related in scope to the circumstances that prompted it. United States v. Shafer, 608 F.3d 1056, 1062 (8th Cir. 2010) (citation omitted). The officer has the authority to inquire into the driver's destination, to check the driver's license and registration, or to request that the driver step out of the vehicle. United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008) (citation omitted). The stop may last as long as reasonably necessary to conduct this routine investigation, conduct a criminal history search, and issue a citation if warranted. Id. It may become unlawful,

however, "'if it is prolonged beyond the time reasonably required to complete' its purpose." Shafer, 608 F.3d at 1062 (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)).

We have recognized that "police officers 'may order out of a vehicle both the driver and any passengers [and] perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous.'" United States v. Oliver, 550 F.3d 734, 737 (8th Cir. 2008) (alteration in original) (quoting Knowles v. Iowa, 525 U.S. 113, 118 (1998)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27 (1968). We determine whether an officer has reasonable suspicion by looking at the totality of the circumstances, taking into account the officer's experience. Shafer, 608 F.3d at 1062 (quotation omitted).

In light of the totality of the circumstances recounted above, we conclude that Stucker had reasonable suspicion of a potential threat to officer safety that justified his decision to frisk Collier after he had determined the subject of the outstanding warrant associated with the car was not present. Stucker initiated this traffic stop late at night, while patrolling alone, to discern whether a male subject with an outstanding assault warrant was present. He observed surreptitious actions by the passenger, as if he were attempting to conceal something behind or beneath his seat. He recognized Collier from a previous narcotics violation for which Collier had been arrested. At the suppression hearing, Stucker testified regarding his knowledge "that narcotics are often associated with weapons," Tr. Mot. Suppress H'rg, at 12, an awareness that we have credited as a ground for heightened concern for officer safety. See United States v. Crippen, 627 F.3d 1056, 1063 (8th Cir. 2010) (citing United States v. Bustos-Torres, 395 F.3d 935, 943 (8th Cir. 2005)). Once Stucker realized that the individual associated with the warrant was not present, he could not expand the scope of the

investigation on that ground. But he could permissibly investigate further based on his reasonable suspicion that Collier posed a threat to officer safety.

Collier argues that "Stucker's actions were completely inconsistent with the belief that Mr. Collier was armed and dangerous[.]" Appellant's Br., at 11. We disagree. Stucker testified that, as a precaution, he had not asked either occupant to exit the vehicle while he was the only officer on the scene. Once the requested backup arrived, Stucker first questioned the female driver while the other officer positioned himself near Collier. After the driver declined to consent to a search of the vehicle, Stucker determined that, based on his observation of Collier's furtive movements, he needed to investigate further and then approached Collier and instructed him to exit the vehicle as the other officer watched. We conclude that Stucker's actions were consistent with a concern for officer safety and were an outgrowth of the reasonable suspicion that Collier possessed contraband or was armed.

This conclusion comports with prior case law, both that in our circuit and that in other circuits. See Oliver, 550 F.3d at 737 (collecting cases, including United States v. Davis, 457 F.3d 817, 822-23 (8th Cir. 2006) (concluding that an officer who observed a passenger in a vehicle "rise off the seat and place his hand behind his back as if he were placing something underneath or behind him" had reasonable suspicion to conduct a search); United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991) (concluding that an officer who observed the defendant's "suspicious movements to the floorboard" and who had "information that the defendant was manufacturing drugs gave the officer reason to believe that [he] may have been carrying a weapon" and was therefore justified in performing a pat down search)).

Finally, ordering Collier out of the car to frisk him did not unreasonably extend the duration of the stop so as to call its constitutionality into question. See Arizona v. Johnson, 129 S. Ct. 781, 788 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something

-6-

other than a lawful seizure, so long as those inquires do not measurably extend the duration of the stop.") Stucker had a legitimate basis for further investigation, in light of which the duration of the stop—five and one half minutes—was reasonable. Accordingly, we conclude that the district court did not err in denying Collier's motion to suppress.

The conviction is affirmed.

_____