# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3677

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for the |
| | * | Southern District of Iowa. |
| Jorge Zamora-Lopez, also | * | |
| known as Jorge Luis Zamora, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 18, 2012
Filed: July 24, 2012

_____

Before RILEY, Chief Judge, BYE and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

Jorge Zamora-Lopez conditionally pled guilty to conspiracy to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. The district court[1] sentenced him to 108 months

_____

[1] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

imprisonment. Zamora-Lopez appeals the district court's denial of his motion to suppress evidence obtained as a result of a warrantless traffic stop. We affirm.

## I. BACKGROUND
### A. Facts

In February 2011, a confidential informant provided Special Agent Michael Mittan of the Iowa Division of Narcotics Enforcement with information leading to the arrest of a methamphetamine supplier. The supplier agreed to cooperate with Agent Mittan.

The supplier informed Agent Mittan that he had purchased methamphetamine from a man the supplier knew as "Nemo" (actually the Spanish nickname "Memo") every three to five days for approximately three years. These transactions usually followed a specific pattern. The supplier or Memo would initiate a meeting with a cell phone call. The supplier would drive to the intersection of South 37th Street and Q Street in Omaha, Nebraska, and wait for Memo. Shortly thereafter, a vehicle (sometimes a silver sport utility vehicle (SUV)) would pull behind the supplier's vehicle. Memo would exit from the passenger side of this vehicle and get into the supplier's vehicle. Both vehicles would then drive away, in different directions. The supplier and Memo would complete the drug transaction while the supplier drove around a nearby residential neighborhood. The supplier would then drive Memo back to their meeting point area, and Memo would either be picked up by the other vehicle, or would leave on foot. The supplier knew nothing about the individual who drove Memo to and from these transactions, or even if the driver were the same person every time.

Agent Mittan decided to set up a controlled drug transaction between the supplier and Memo for February 25, 2011. Agent Mittan organized a meeting to plan the operation with the supplier, Douglas County (Nebraska) Deputy Sheriff Jason Mass, and other law enforcement personnel. During this meeting, Memo twice called

the supplier to set up a deal, and the supplier agreed. Officers established surveillance near the designated point, and the supplier waited at the meeting point as usual. A silver Jeep Cherokee pulled behind the supplier's vehicle, and Deputy Mass observed a man matching Memo's description exit the passenger side of the Jeep and enter the passenger's side of the supplier's vehicle. The two vehicles drove away separately. Deputy Mass followed the Jeep in his unmarked vehicle.

After following the Jeep for a few blocks, Deputy Mass decided to stop the vehicle and arrest the driver. A marked K-9 sheriff's vehicle signaled for the Jeep to stop, and deputies approached the vehicle. The deputies ordered the driver, later identified as Zamora-Lopez, to exit the vehicle. The deputies informed Zamora-Lopez he was under arrest and placed him in handcuffs. When his arms were placed behind his back, Zamora-Lopez's coat pocket came open, revealing what Deputy Mass believed to be a large baggie containing methamphetamine. The deputies seized the baggie.

### B.    Procedural History

A grand jury indicted Zamora-Lopez for conspiring to distribute methamphetamine and for an immigration violation. Zamora-Lopez moved to suppress the evidence uncovered as a result of the traffic stop. After a hearing, the district court denied the motion because "[t]here was probable cause to believe that the silver Jeep Cherokee and its driver had recently been involved in the trafficking of approximately one-quarter pound of methamphetamine." Zamora-Lopez pled guilty to conspiracy to distribute methamphetamine, preserving his right to appeal the district court's suppression order. Zamora-Lopez appeals.

## II.    DISCUSSION

When reviewing the denial of a motion to suppress, we review questions of law de novo and the district court's factual findings for clear error. See United States v. Payne, 534 F.3d 948, 950 (8th Cir. 2008). We will affirm the district court "unless

the denial of the motion 'is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made.'" Id. at 951 (quoting United States v. Stachowiak, 521 F.3d 852, 854 (8th Cir. 2008)).

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures by the government. See U.S. Const. amend. IV. Subject to a few narrow exceptions, a warrantless search or seizure violates the Fourth Amendment. See Katz v. United States, 389 U.S. 347, 357 (1967). "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot, the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions." Minnesota v. Dickerson, 508 U.S. 366, 372-73 (1993) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)) (internal marks omitted).[2] Whether such suspicions are reasonable is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time. See United States v. Stewart, 631 F.3d 453, 457 (8th Cir. 2011). If reasonable suspicion exists, officers may briefly detain a vehicle and its occupants to conduct a reasonable investigation. See United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (confirming that an investigatory traffic stop is "governed by the principles of Terry v. Ohio").

Zamora-Lopez argues the deputies lacked reasonable suspicion that the unknown driver of the Jeep was involved in Memo's narcotics trafficking operations. This argument relies on a too-narrow conception of reasonable suspicion and fails to

---

[2]On appeal, Zamora-Lopez only argues the deputies lacked reasonable suspicion to conduct an investigatory stop. We do not consider whether other aspects of the stop implicate constitutional concerns. See United States v. Kirk, 528 F.3d 1102, 1104 n.2 (8th Cir. 2008) (explaining the court of appeals will not consider undeveloped issues perfunctorily raised in the appellate brief).

consider the totality of the information available to the deputies. See Stewart, 631 F.3d at 457. The supplier earlier described to law enforcement a very specific pattern of long-standing conduct that nearly always involved three people—the supplier, Memo, and an unknown driver. Memo and his driver sometimes arrived in a silver SUV. Memo's driver frequently stayed in the area to pick up Memo following the drug transaction. The deputies' surveillance observations during the controlled buy confirmed the supplier's account in virtually every detail. Cf. Illinois v. Gates, 462 U.S. 213, 241-46 (1983) (concluding probable cause existed to issue a search warrant where an anonymous informant's tip was corroborated by law enforcement officers' independent investigations).

The deputies believed Memo was an experienced and high-volume drug trafficker. Such an individual might be expected to rely on trusted confederates to drive him to and from his drug transactions. While Memo might have used unknown and innocent drivers, it was reasonable for the deputies to suspect the unidentified driver was knowingly involved in Memo's drug trafficking activities. Thus, Zamora-Lopez's Fourth Amendment rights were not violated, and the district court's admission of the evidence resulting from the traffic stop was proper.

## III.    CONCLUSION
We affirm.

_____