# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3924
_____

United States of America

*Plaintiff - Appellee*

v.

Monterrio M. Woods

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 20, 2013
Filed: April 1, 2014
_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.
_____

BEAM, Circuit Judge.

Monterrio Woods appeals the district court's[1] denial of his motion to suppress, arguing that the stop and frisk of his person and the subsequent discovery of a firearm violated his Fourth Amendment rights. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

On August 20, 2011, at approximately 8:30 p.m., Officers Bailey, Jamieson and Dimartino responded to a report of a suspicious person armed with a gun at a bus stop near 12th Street and Grand Avenue in Kansas City, Missouri. An individual called 911 ("the caller") and relayed that he saw a man with a gun on his person while riding the bus. The caller described the individual as a black male wearing a black hat, tan pants and a white t-shirt. Officer Bailey arrived at the scene a few minutes before Officers Jamieson and Dimartino and observed a black man wearing a dark colored hat leaving the bus stop on foot. Upon arriving, Officers Jamieson and Dimartino noticed two individuals sitting at the end of the bus stop who also matched the description given. The individuals identified by Officers Jamieson and Dimartino watched the officers intently, but Officer Bailey radioed that he was approaching another man, so the two officers provided him back-up. Officer Bailey approached the man leaving the bus stop from behind and commanded him to turn around. When the man did not respond, Officer Bailey took the man to the ground and frisked him for weapons. Officers Bailey and Dimartino then recognized the man as an intoxicated homeless man, whom they had dealt with before. Based on their previous encounters, the officers did not believe him to be the individual with the gun, and abandoned that lead.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

Officer Jamieson then contacted the 911 caller by phone for further information. The caller, who was still in the area watching the officers' actions, advised Officer Jamieson that the officers had stopped the wrong person. The caller insisted that the man he saw on the bus with a gun was one of the two men sitting at the end of the bus stop. The caller noted one of the men had a black hat and the other had a camouflage hat. Specifically, Officer Jamieson testified, "[the caller] said, You have the wrong guy. It's the two guys at the end of the bus stop on the far end and he went on to describe their clothing and their hats." The caller told Officer Jamieson that he had seen the butt of a gun on one of the two men, but did not specify which man had the weapon. Officer Jamison relayed this information to the other officers. The officers, again, observed the two men sitting closely together at the bus stop, one wearing a black hat and the other wearing a camouflage hat. With their weapons drawn, the officers approached the two men sitting next to one another and commanded them to put their hands in the air. Officer Dimartino conducted a frisk of the man in the black hat and located a loaded firearm in his waistband area. Officer Jamieson, then, frisked the man in the camouflage hat, later identified as Woods, and also recovered a firearm in the waistband of his pants. Officer Jamieson testified that she frisked Woods for the officers' safety. They arrested both men.

Woods was indicted as a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Woods filed a motion to suppress the evidence seized during the search of his person on August 20, 2011, namely the firearm. The district court, adopting the magistrate judge's report and recommendation, denied the motion to suppress. Woods pleaded guilty, but reserved the right to appeal the denial of his motion to suppress. Woods was sentenced to 37 months' imprisonment, the low end of the Guidelines' range of 37 to 46 months, followed by three years of supervised release. Woods now appeals the denial of his motion to suppress.

## II.   DISCUSSION

When reviewing the denial of a motion to suppress evidence, we review legal conclusions de novo and factual findings for clear error.  United States v. Zamora-Lopez, 685 F.3d 787, 789 (8th Cir. 2012).  "We will affirm the district court unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made."  Id. (internal quotations omitted).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  "Subject to a few narrow exceptions, a warrantless search or seizure violates the Fourth Amendment."  Id.  The "stop and frisk" exception to the Fourth Amendment provides that

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Terry v. Ohio, 392 U.S. 1, 30 (1968).  Such a search "requires more than an officer's 'inchoate and unparticularized suspicion or "hunch."'"  United States v. Cotter, 701 F.3d 544, 547 (8th Cir. 2012) (quoting Terry, 392 U.S. at 27)).  Rather, the "officer conducting the search 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"  Id. (quoting Terry, 392 U.S. at 21).  "In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers'

-4-

experience and specialized training." Id. (quotation omitted).  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  Terry, 392 U.S. at 27.

"There is no neat set of legal rules that governs the determination whether the police had reasonable suspicion."  United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008) (internal quotation omitted).   Rather, we determine reasonable suspicion by examining the totality of the circumstances, taking into consideration the circumstances "through the eyes of the officers, because they are trained to cull significance from behavior that would appear innocent to the untrained observer."  Id. (quotation omitted).  "If, however, the officers conduct an illegal search or detention," in violation of the Fourth Amendment, "physical evidence from the search . . . must be excluded as the 'fruits' of the officers' unlawful action."  Cotter, 701 F.3d at 547.

Woods contends that the officers lacked reasonable suspicion that criminal activity was afoot and that Woods was armed and dangerous. Woods's arguments, however, ignore our "totality of the circumstances" approach.   The officers, responding to the 911 call, believed that there was a man, wearing tan pants, a white t-shirt, and a black hat, in the area, carrying a gun.  Under Missouri law, it is unlawful to knowingly carry a concealed weapon, Missouri Revised Statutes § 571.030.1(1), and a weapon is considered "concealed" if it is not discernible by ordinary observation.  State v. Wright, 382 S.W.3d 902, 904 (Mo. 2012).  Considering Missouri law, and based on the call that there was an individual carrying a concealed weapon that had exited the bus, the officers had reason to believe criminal activity was afoot.

Too, as the magistrate judge recognized, given Officer Jamieson's second conversation with the caller, wherein the caller redirected the officers to the two men sitting together at the bus stop but stopped short of specifying which one had the gun,

the totality of the circumstances as to Woods changed. At that point, the officers had reasonable suspicion to believe that at least one of the two men was armed. The officers approached the two men. Officer Dimartino frisked the man in the black hat and uncovered a fully-loaded handgun in the waistband of his pants. It was at this moment that Officer Jamieson, for her safety and that of the officers, frisked Woods. Given that, during Jamieson's phone conversation with the 911 caller, the caller, who was still present on the scene, directed the officers to the two individuals sitting together at the bus stop, without identifying which one he saw carrying the gun, and given that the officers had just recovered a gun on the individual in the black hat, Officer Jamieson had reasonable suspicion to support her frisk of Woods.

Woods challenges this conclusion, asserting that because he was wearing a camouflage hat, rather than a black hat, the caller's information did not provide the officer with reasonable suspicion to support the officer's frisk and the officer could not base her reasonable suspicion on the mere fact that he was seated next to the man in the black hat at the bus stop. But, given the totality of the circumstances, Woods's arguments do not negate the officer's reasonable suspicion that she should conduct a minimally invasive frisk of Woods. See United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996) (noting that our circuit rejected the "automatic companion" approach, which allows officers to automatically search all companions of an arrestee, but companionship can be one relevant factor to be considered in our "totality of the circumstances" approach). Accordingly, Woods's argument fails.

Certainly, the facts of our case differ from those in Florida v. J.L., where the Supreme Court held that an anonymous tip lacking indicia of reliability does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm. 529 U.S. 266, 273-74 (2000). In J.L., the police received an anonymous tip that a young black man, who was wearing a plaid shirt and standing at a particular bus stop, was carrying a firearm. Id. at 268. In its holding, the Court reasoned that the tip lacked the "moderate indicia of reliability," because while the tip provided a

description of the individual's appearance and location, it did not show how the tipster had knowledge of the concealed criminal activity.  Id. at 271-72.  In contrast to J.L., the caller here indicated that, while riding the bus, he saw a gun  on the person of the man described, demonstrating how the tipster had knowledge of the concealed criminal activity.  Additionally, when Officer Jamieson recontacted the 911 caller, the caller indicated that he was still in the vicinity and was watching the officers.  It was at that time the caller directed the officers to Woods and the other man in the black cap seated at the bus stop.  Thus, given the facts of this case, the additional information provided the moderate indicia of reliability necessary to support the officers' reasonable suspicion.

## III.  CONCLUSION

For these reasons, we conclude that the frisk was in accordance with the Fourth Amendment and affirm the district court's denial of Woods's motion to suppress.

_____