# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1668

_____

United States of America

*Plaintiff - Appellee*

v.

Titus K. Dillard

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 19, 2015
Filed: June 9, 2016

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The government indicted Titus K. Dillard for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Dillard moved to suppress the firearm, claiming its seizure violated the Fourth Amendment. After the district court[1] denied

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

the motion to suppress, Dillard entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. We now affirm.

## I.

At approximately 9:00 PM on May 10, 2013, Kansas City, Missouri Patrol Officers Jeremy Gragg and Tyrone Phillips were patrolling together in a marked patrol car near the intersection of 50th Street and Michigan Avenue in Kansas City. The officers testified that this is a high-crime area of Kansas City where shootings, illegal drug activity, and automobile thefts are common. While patrolling, Officers Gragg and Phillips noticed three individuals standing near a Ford Taurus that was legally parked on the side of Woodland Avenue. As another patrol car passed by the Taurus, all three individuals moved away from the vehicle. Dillard, who was standing by the driver's door, which was also the street-side door, moved to the rear of the Taurus and then returned to the driver's door after the patrol car passed. The other two individuals who had been standing by the Taurus walked toward a nearby residence and did not return to the Taurus.

Officers Gragg and Phillips decided to drive by the Taurus to obtain the license plate number. As they did so, Dillard again walked to the rear of the vehicle and out of the street as the patrol car passed. Believing Dillard's activities to be suspicious, Officers Gragg and Phillips decided to conduct a "pedestrian check" or "car check." The officers suspected that Dillard was either attempting to break into the vehicle, had previously stolen the vehicle, or possibly was hiding something in the vehicle with which Dillard did not want to be associated. As the officers made a U-turn, they realized the Taurus was gone from its parking spot and no longer visible. Officer Phillips, who was driving the patrol car, testified that based on his familiarity with Woodland Avenue, which had a speed limit of 25 miles-per-hour, the Taurus would not be able to reach the next intersection and travel out of view in the time it took the officers to make the U-turn unless the Taurus was traveling at a high rate of speed.

-2-

The officers radioed for assistance locating the car and gave a description of the car and driver. Another officer located and stopped Dillard. During that stop, officers discovered a loaded firearm in the car.

Dillard moved to suppress the firearm. A United States Magistrate Judge made findings of fact and issued a report recommending that the motion be granted, concluding the officers' decision to stop the Taurus was the product of a hunch and not based on reasonable suspicion of criminal activity. The district court adopted the magistrate judge's factual findings, but declined to adopt the recommended disposition of the motion to suppress. Instead, the district court held Dillard "engaged in a series of seemingly innocent acts, that when taken together warranted further investigation." The district court noted that those acts that established reasonable suspicion to stop the Taurus included standing near the vehicle in a group in a high-crime area, walking away from the vehicle and returning to the vehicle after a patrol car passed, and driving away from the area just after officers passed by the vehicle in what the officers, based on their training and experience, believed to be a high rate of speed. The district court denied Dillard's motion to suppress.

II.

"We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Hurd, 785 F.3d 311, 314 (8th Cir. 2015) (quoting United States v. Clutter, 674 F.3d 980, 982 (8th Cir. 2012)). "We will affirm the district court unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Zamora-Lopez, 685 F.3d 787, 789 (8th Cir. 2012) (internal quotations omitted).

Under the Fourth Amendment, "[l]aw enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." United States v. Bustos-Torres, 396 F.3d 935, 942 (8th Cir. 2005) (citing Terry v. Ohio, 392 U.S. 1, 25-31 (1968)). "A reasonable suspicion is a 'particularized and objective' basis for suspecting [criminal activity by] the person who is stopped." Id. (quoting United States v. Thomas, 249 F.3d 725, 729 (8th Cir. 2001)). Reasonable suspicion is determined by "look[ing] at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing [based on his] own experience and specialized training to make inferences from and deductions about the cumulative information available." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal citations and quotations omitted). Although officers may not rely on "inarticulate hunches" to justify the stop, see Terry, 392 U.S. at 22, the likelihood of criminal activity also does not need to rise to the probable cause level, see Arvizu, 534 U.S. at 274. The Supreme Court has repeatedly reminded that the concept of reasonable suspicion is composed of "commonsense" and "nontechnical" concepts instead of "finely-tuned standards," and determining whether there is reasonable suspicion depends on "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)).

We agree with the district court's conclusion that the officers had reasonable suspicion to stop Dillard. As Officers Gragg and Phillips were patrolling in a high-crime area, they observed Dillard and others act suspiciously when another patrol car drove past the Taurus. Everyone except Dillard moved away from the vehicle and did not return. Dillard moved from the driver's side door to the rear of the Taurus and then returned to that spot after the other patrol car had passed. When Officers Gragg and Phillips drove by Dillard and the Taurus, they observed him again move to the rear of the Taurus and return to the driver's side after they passed. Based on these observations, the officers decided to perform a "pedestrian check" or "car check."

When the officers made a U-turn to perform the check, the Taurus was gone, and the officers, based on their training and experiences, reasonably believed the Taurus had left at a high-rate of speed. See United States v. Hightower, 716 F.3d 1117, 1121 (8th Cir. 2013) ("Although simply ignoring the police cannot be the basis for reasonable suspicion, conduct beyond merely ignoring, such as attempting to flee, can create reasonable suspicion to support a Terry stop.").

We disagree with Dillard's assertion that this situation is controlled by our decision in United States v. Jones, 606 F.3d 964 (8th Cir. 2010) (per curiam). Jones is distinguishable because there we criticized the failure of the government to "identify what criminal activity [the officer] suspected" Jones of engaging in and the government's "leap[] to the officer safety rationale for a protective frisk for weapons" without first showing reasonable suspicion for the Terry stop. Id. at 966. Only on appeal did the government identify a possible criminal violation the officers could have believed Jones was committing. Id. at 966-67. Further, the only suspicious activity identified by the officer in Jones was the defendant's clutching of his outside hoodie pocket, and we noted "that nearly every person has, at one time or another, walked in public using one hand to 'clutch' a perishable or valuable or fragile item being lawfully carried in a jacket or sweatshirt pocket in order to protect it from falling to the ground or suffering other damage." Id. at 967.

Here, the officers decided to conduct the "pedestrian check" or "car check" because they reasonably believed Dillard could be involved in an automobile theft or could have been hiding something illegal in the Taurus. Reasonable suspicion arose when the officers made the U-turn and reasonably believed that the Taurus had fled the scene at a high rate of speed. Considered with the other circumstances observed by the officers leading up to that moment, the officers were justified under the Fourth Amendment in stopping the fleeing Taurus to investigate whether criminal activity was afoot. See Arvizu, 534 U.S. at 273.

## III.

Accordingly, we affirm the district court's denial of Dillard's motion to suppress.

_____