# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3214
_____

United States of America

*Plaintiff - Appellee*

v.

Raul Flores Marin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: June 17, 2020
Filed: February 24, 2021

_____

Before LOKEN and GRASZ, Circuit Judges, and PITLYK,[1] District Judge.

_____

PITLYK, District Judge.

Responding to a report of an unknown vehicle on a remote farm in the middle of the night, a sheriff's deputy passed a truck matching the reported vehicle's description. It had been barely ten minutes since the report, and the truck was two

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri, sitting by designation.

miles from the farm, driving away from it on an otherwise deserted road. When the deputy turned around to follow it, the truck veered onto the wrong side of the road. The deputy initiated a traffic stop, which culminated more than 35 minutes later in the arrest of the driver, Raul Marin.

Based in part on evidence collected from Marin's truck during and after that traffic stop, a jury later convicted him of possession with intent to distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and conspiracy to distribute a controlled substance.

On appeal, Marin challenges two holdings of the District Court[2]: (1) that the evidence presented at trial was sufficient to support his conviction for possession of a firearm in furtherance of a drug trafficking crime, and (2) that the traffic stop that led to his arrest did not violate his Fourth Amendment rights. We affirm.

## I. Background

Shortly after 2:40 AM on July 19, 2017, the Sheriff's Office of Osceola County, Iowa, received an emergency call from Jerry Seivert, who reported an unfamiliar pickup truck with Minnesota plates on his property. Dispatch sent Deputy Caleb Edwards to investigate. Edwards had been to Seivert's farm in rural Osceola County a few weeks before to investigate another report of a suspicious vehicle. Edwards also knew that Seivert had recently reported a daytime burglary of his residence, in which firearms and ammunition had been taken.

At 2:53 AM, about two miles from Seivert's property, Edwards encountered a Ford F-150 pickup truck traveling in the opposite direction, away from the farm. It was the first vehicle Edwards had encountered since leaving the Sheriff's Office.

---

[2]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendations of the Honorable Kelly K.E. Mahoney, United States Magistrate Judge for the Northern District of Iowa.

As the truck passed, Edwards observed that it had Minnesota plates. Because the truck matched Seivert's description of the vehicle that had been on his property, Edwards turned around to follow it. Shortly thereafter, the truck veered onto the left-hand side of the road, nearly entering a ditch on the opposite side. When Edwards caught up to the truck, he initiated a traffic stop.

Edwards approached the truck and asked the driver—later identified as Raul Marin—what he was doing. Marin responded that he was looking for his friend Clint Reiter to obtain the title to a trailer. Edwards requested Marin's driver's license, registration, and proof of insurance and asked Marin to accompany him to his squad car. Edwards also asked Marin if he had any weapons on his person; Marin responded in the negative. Edwards then asked to pat Marin down. Mid-pat-down, Marin reported having a Swiss army knife in his pocket, which Edwards confiscated.

Observing that Marin's speech was excited and fast, Edwards suspected that Marin might have been impaired. In response to questions about drug use, Marin admitted to using marijuana only once many years ago; he denied any other drug use. Edwards then obtained Marin's consent to take his pulse, which measured 120 to 125 beats per minute. Edwards radioed Deputy Matt Julius, a certified Drug Recognition Expert, for assistance. Edwards told Marin that, because his pulse was high, Edwards had called in an expert to ensure Marin was not intoxicated. While waiting for Julius to arrive, Edwards moved Marin, who was not handcuffed, to the backseat of the squad car. Edwards informed Marin that he was not under arrest.

Deputy Julius arrived about 20 minutes after Edwards radioed him and 35 minutes after the initial stop. Julius asked Marin if he had anything illegal in his vehicle, and Marin reported that he had a loaded handgun in the backseat under an article of clothing. Julius found the firearm where Marin had indicated. Edwards asked Marin if he had a permit to carry the firearm, and Marin responded that he did not. Edwards placed Marin under arrest and took him to jail. On inventory of the vehicle, Julius found methamphetamine, brass knuckles, a large amount of cash ($1,240), and cell phones.

The Government obtained a grand jury indictment charging Marin with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Marin filed a motion to suppress the evidence obtained as a result of the July 19, 2017, traffic stop. Over Marin's objections, the District Court adopted the recommendation of the Magistrate Judge to deny the motion to suppress.

The Government later obtained a superseding indictment against Marin, adding a charge of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846. After a four-day jury trial, Marin was found guilty on all three counts of the superseding indictment. He filed a motion for judgment of acquittal or new trial, which the District Court denied. He was sentenced to 180 months in prison.

Marin timely filed this appeal, arguing that the evidence presented at trial was insufficient to convict him of possession of a firearm in furtherance of a drug trafficking crime, and that the July 19, 2017, traffic stop violated his Fourth Amendment rights.

## II. Analysis

### A. Sufficiency of the Evidence Under 18 U.S.C. § 924(c)

Marin contends that the evidence presented at trial was insufficient to convict him of possession of a firearm in furtherance of possession of a controlled substance with intent to distribute under 18 U.S.C. § 924(c). We disagree.

"We review challenges to the sufficiency of the evidence de novo." *United States v. Johnson*, 745 F.3d 866, 868-69 (8th Cir. 2014) (citation omitted). "When reviewing the sufficiency of the evidence, we view the facts in the light most

favorable to the verdict, and affirm if any rational [factfinder] could have found the defendant guilty beyond a reasonable doubt." *United States v. Ojeda-Estrada*, 577 F.3d 871, 874 (8th Cir. 2009) (citation omitted).

"To satisfy the 'in furtherance of' element of § 924(c), the government must present evidence from which a reasonable trier of fact could find the possession had the effect of furthering, advancing or helping forward the drug crime." *United States v. McDaniel*, 925 F.3d 381, 386-87 (8th Cir. 2019) (cleaned up); *see also United States v. Lindsey*, 507 F.3d 1146, 1148 (8th Cir. 2007) ("To convict [the defendant] of possessing a firearm in furtherance of a drug trafficking crime, the government had to prove a nexus between [the defendant's] possession of the firearm and the drug crime." (citation omitted)). "A defendant's simultaneous possession of drugs and a firearm, standing alone, is insufficient to sustain a conviction." *United States v. Hilliard*, 490 F.3d 635, 640 (8th Cir. 2007).

The Government presented sufficient evidence at Marin's trial to satisfy the "in furtherance of" element of § 924(c). The firearm was found in close proximity to the drugs and readily accessible to Marin, and an expert testified that firearms—and handguns in particular—are commonly used tools of the drug trade. This Court has repeatedly found similar showings sufficient to support conviction under § 924(c). *See United States v. Close*, 518 F.3d 617, 619 (8th Cir. 2008) (citing *United States v. Bell*, 477 F.3d 607, 613-14 (8th Cir. 2007)) ("[T]he jury may infer that the firearm was used in furtherance of a drug crime when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking."); *see also, e.g.*, *United States v. Griffin*, 617 F. App'x 610, 613 (8th Cir. 2015) (evidence of marijuana and loaded firearm found within reach of driver's seat along with testimony from experienced narcotics agent sufficient to establish nexus between possession of the firearm and marijuana trafficking); *Lindsey*, 507 F.3d at 1148 (evidence that firearm was discovered beneath defendant's seat and near drugs, coupled with expert testimony, supported conviction under § 924(c)).

Several fact witnesses also provided testimony supporting a nexus between Marin's possession of the firearm and his drug trafficking. For example, Reiter testified that he bought substantial quantities of methamphetamine from Marin at Seivert's property and that he owed Marin money for drugs prior to Marin's arrest. Another witness testified that Marin told him he had brought a gun the night of his arrest to collect a drug debt in Iowa. A third witness reported hearing from Marin's drug supplier that the supplier had provided Marin with a firearm to collect a drug debt from Reiter. And Seivert testified that his property was used by local dealers, including Marin, to sell drugs, and that he later learned that Marin had been on his property on July 19, 2017, looking for Reiter, who owed him money for drugs.

Marin argues that the above testimony is undercut by testimony from Jose Leones that a gun would interfere with collection of a debt, and from Luis Magallanes that Marin had bought the gun to address predatory animals attacking his chickens. But this Court will not second-guess a jury's credibility determinations or the weight it assigns to conflicting testimony. *See United States v. Goodale*, 738 F.3d 917, 923 (8th Cir. 2013) ("Reviewing the sufficiency of the evidence, it is axiomatic that this court does not pass upon the credibility of witnesses or the weight to be given their testimony. Credibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference." (cleaned up)).

Considered "in the light most favorable to the verdict," *Ojeda-Estrada*, 577 F.3d at 874, the evidence presented at trial established that (1) Marin sold methamphetamine to Reiter, among others; (2) Reiter owed Marin money for methamphetamine; (3) Marin went to Seivert's property on July 19, 2017, to find Reiter; (4) Marin and others often bought and sold drugs on Seivert's property; (5) Marin told associates that he had brought a handgun to collect a drug debt; and (6) the gun was found near brass knuckles and large amounts of methamphetamine and cash, all of which were accessible to Marin as he drove his truck on July 19, 2017. Such a showing certainly could have led a rational factfinder to find Marin guilty under 18 U.S.C. § 924(c) of possessing a firearm in furtherance of possession of a controlled substance with intent to distribute. *See Robinson*, 617 F.3d at 988-

89 (affirming § 924(c) conviction where handgun was in close proximity to trafficking quantities of methamphetamine and trafficking paraphernalia, and where expert testified regarding use of firearms in methamphetamine trafficking); *see also United States v. Sanchez-Garcia*, 461 F.3d 939, 947 (8th Cir. 2006) (same).

Because the evidence presented at trial was sufficient to support Marin's § 924(c) conviction, the District Court's denial of Marin's motion for judgment of acquittal is affirmed.

## B. Constitutionality of the July 19, 2017, Traffic Stop

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Marin argues that both the initial traffic stop and the length of his ensuing detention violated the Fourth Amendment's proscription against unreasonable searches and seizures. Again, we disagree.

"We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (quoting *United States v. Clutter*, 674 F.3d 980, 982 (8th Cir. 2012)). "We will affirm the district court unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *United States v. Dillard*, 825 F.3d 472, 474 (8th Cir. 2016) (citation omitted).

### a. The traffic stop did not violate the Fourth Amendment.

"A traffic stop constitutes a seizure and must be supported by probable cause or reasonable suspicion." *United States v. Gordon*, 741 F.3d 872, 876 (8th Cir. 2013) (citing *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)). Marin contends that Deputy Edwards had neither reasonable suspicion to believe that Marin was

engaged in criminal activity nor probable cause to believe that a traffic violation had occurred, making the stop an illegal seizure in violation of the Fourth Amendment.

"Under the Fourth Amendment, '[l]aw enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity.'" *Dillard*, 825 F.3d at 474 (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005)). "A law enforcement officer has reasonable suspicion [to conduct an investigatory stop] when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) (quoting *Hollins*, 685 F.3d at 706 (internal quotation marks omitted)). "The likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Daniel*, 887 F.3d 350, 354 (8th Cir. 2018) (alteration omitted) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). "[W]hen determining whether reasonable suspicion exists, we consider the totality of the circumstances." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016) (citing *United States v. Woods*, 747 F.3d 552, 556 (8th Cir. 2014)).

The District Court held that the circumstances of July 19, 2017, provided Deputy Edwards with reasonable, articulable suspicion to justify the traffic stop. Those circumstances included: (1) Seivert's report of a pickup truck with Minnesota license plates trespassing on his farm in the middle of the night—an incident similar to one that had been reported only weeks before; (2) Edwards's encounter with a truck matching the description of the reported vehicle within a few minutes of receiving the call and within a few miles of Seivert's farm, in a rural area in the middle of the night; (3) the recent burglary of Seivert's property in which firearms and ammunition had been taken; and (4) Marin's vehicle veering onto the wrong side of the road as soon as Edwards began following it.

None of the District Court's factual findings is clearly erroneous, and together they are sufficient to provide reasonable suspicion for a traffic stop under this Court's precedents. *See Daniel*, 887 F.3d at 355 (reasonable suspicion to stop vehicle based on matching description from dispatch and "temporal and geographic proximity" to crime scene); *United States v. Juvenile TK*, 134 F.3d 899, 903 (8th Cir. 1998) (same); *United States v. Farnell*, 701 F.3d 256, 260-62 (8th Cir. 2012) (same).

### b. The extension of the traffic stop did not violate the Fourth Amendment.

Marin contends that the July 19, 2017, traffic stop "exceeded the time needed to handle the matter for which the stop was made," rendering his detention unconstitutional. *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). Edwards could not have developed reasonable suspicion to extend the stop, Marin claims, if the officer had not improperly prolonged the initial stop to question Marin. He argues that the officers unlawfully engaged in a "blended process" by detaining him for reasons unrelated to the lane violation that had been the stop's original purpose. *See United States v. Peralez*, 526 F.3d 1115, 1121 (8th Cir. 2008) (traffic stop was unlawfully extended where officer "engaged in a 'blended process' of conducting a routine traffic stop and a drug interdiction investigation").

Marin's argument is unavailing. Here, unlike in *Rodriguez*, the initial traffic stop was justified by more than "a police-observed traffic violation." *Rodriguez*, 575 U.S. at 350-51. As described above, Deputy Edwards's reasonable suspicion was also based on the vehicle's temporal and geographic proximity to a reported crime involving a vehicle matching its description. Therefore, the initial stop was not limited to "the time reasonably required to complete the mission of issuing a ticket . . . ." *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (cleaned up)). Rather, the officer was justified in taking a reasonable amount of time to investigate both the traffic violation and the vehicle's suspected involvement in the reported crime. *See, e.g.*, *United States v. Mosley*, 878 F.3d 246, 254 (8th Cir. 2017)

(assessing the reasonableness of the duration of a stop where "the mission of the stop was . . . to determine whether and to what extent the Taurus was involved in the bank robbery").

Consistent with the stop's initial justification, Edwards questioned Marin about his erratic driving and his presence on Seivert's farm. Marin offered implausible explanations for both. He also manifested excited speech and mannerisms, and his heart rate was elevated.[3] "An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *Woods*, 829 F.3d at 679 (citing *United States v. Anguiano*, 795 F.3d 873, 876 (8th Cir. 2015)). Here, Deputy Edwards discovered information leading to reasonable suspicion of drug use. He was therefore justified in prolonging the stop in order to question Marin further and to call Deputy Julius to investigate whether Marin was under the influence of drugs. *See United States v. Sanchez*, 417 F.3d 971, 976 (8th Cir. 2005) (driver's nervous behavior and strange answers provided officer with reasonable suspicion to prolong traffic stop).

In *Peralez*, on which Marin relies, we noted that we were not addressing a situation in which "the officer develops reasonable suspicion that other criminal activity is afoot," in which case "the officer may expand the scope of the encounter to address that suspicion." *Peralez*, 526 F.3d at 1120. Here, we address precisely that situation. During a traffic stop based on a traffic violation and suspected involvement in a reported crime, Deputy Edwards developed reasonable suspicion

---

[3]Marin claims that he was not informed of his right to refuse a search or a check of his pulse, but "the Government was not required to demonstrate that [Marin] knew of his right to refuse the request to search as a prerequisite to establishing . . . voluntary consent.'" *United States v. Garcia-Garcia*, 957 F.3d 887, 897 (8th Cir. 2020) (internal quotation marks and citation omitted). "It needed only to prove that a reasonable officer would believe that the consent was not the result of duress or coercion, express or implied." *Id.* (internal quotation marks and citation omitted). Marin points to nothing in the record that would cause a reasonable officer to believe that his consent was the result of duress or coercion.

that "other criminal activity [was] afoot," which justified his expansion of the scope of the encounter to investigate that suspected activity. *Id.*

Considering the complex rationale for the original traffic stop and the fact that Marin's conduct gave rise to reasonable suspicion of further criminal activity, we find that the 35-minute duration of Marin's detention was reasonable. *See, e.g.*, *Sanchez*, 417 F.3d at 975 (45-minute wait for a drug dog was reasonable); *see also United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) (one-hour delay was reasonable).

Because there was sufficient justification for both the initiation and the duration of the July 19, 2017, traffic stop, we affirm the District Court's denial of Marin's motion to suppress evidence obtained as a result of that stop.

### III. Conclusion

For the foregoing reasons, the orders of the District Court are affirmed.

———————————————