# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1407

_____

| | | |
|---|---|---|
| United States, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Reubin R. Sanders, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2007
Filed: December 20, 2007

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Reubin R. Sanders was indicted for being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). He filed a motion to suppress evidence of the firearm, arguing that it was the product of an illegal seizure. The District Court[1] denied the motion, and Sanders pleaded guilty to the charge while reserving the right to appeal the evidentiary issue. Sanders now exercises that right to appeal. We affirm.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

The facts in this case are not in dispute. At approximately 6:30 p.m. on January 23, 2006, Officer Toni Uredi of the Jackson County, Missouri, Sheriff's Department observed Donald Wilson driving a Plymouth Acclaim in Kansas City, Missouri. Aware that Wilson's driver's license was suspended, Officer Uredi began following the car. Officer Uredi radioed in the car's license plate information and was told that the license plate number was not registered to a Plymouth Acclaim.[2] Officer Uredi activated his lights and initiated a traffic stop of the car. The car stopped in a parking lot next to an apartment building in what Officer Uredi considered to be a high-crime area. Before Officer Uredi could approach the car, Sanders, who was a passenger in the front seat, got out. Officer Uredi immediately ordered Sanders to reenter the car, which Sanders did after Officer Uredi repeated the order two more times. Officer Uredi then approached the driver's side of the car to speak with Wilson. As he neared the car, Officer Uredi saw a black pistol grip protruding from Sanders's left front pocket. Officer Uredi radioed for assistance. After other officers arrived, Sanders was forcibly removed from the car, and a semiautomatic pistol was removed from his pocket.

Sanders was arrested and charged with unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). Sanders filed a motion to suppress evidence of the gun on the ground that he was unlawfully seized when Officer Uredi ordered him to reenter the car, making evidence of the gun found on his person the so-called "poisonous fruit" of the seizure. Following an evidentiary hearing, the magistrate judge recommended that the motion to suppress be denied. The District Court adopted the magistrate judge's recommendation and denied the motion. Sanders entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to suppress. He now timely appeals the evidentiary ruling.

---

[2]This information was erroneous; after stopping the car and making an arrest, Officer Uredi learned that the license plate number was registered to a Plymouth Acclaim.

"On appeal from a denial of a motion to suppress, we review for clear error the factual findings of the district court and we review *de novo* the legal determination that the Fourth Amendment was not violated." United States v. Robinson, 455 F.3d 832, 834 (8th Cir. 2006). Evidence that is the "'fruit'" of a seizure that violates the Fourth Amendment is not admissible. United States v. Vega-Rico, 417 F.3d 976, 979 (8th Cir. 2005) (quoting Wong Sun v. United States, 371 U.S. 471, 485 (1963)).

Sanders does not contest the legality of the initial stop of Wilson's car. Sanders argues, rather, that Officer Uredi violated his Fourth Amendment rights by subsequently ordering him to reenter the stopped car—thereby detaining him—without a basis to infer that he was involved in criminal activity. If the detention was not reasonable under the Fourth Amendment, then the gun found as a result of the detention was the fruit of an illegal seizure and evidence of it should have been suppressed.

While the Supreme Court has not addressed this particular issue, it has decided the closely analogous question of whether a police officer may order a passenger in a vehicle to *exit* the vehicle during a lawful traffic stop. Maryland v. Wilson, 519 U.S. 408, 410 (1997). Applying Fourth Amendment jurisprudence, the Court balanced the "'public interest'" in police officer safety with the right of passengers to be "'free from arbitrary interference by law officers.'" Id. at 411 (quoting Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (per curiam)).[3] On the public interest side of the balance, the Court deemed police officer safety a "weighty interest." Id. at 413. The Court cited statistics of assaults and killings of police officers during traffic pursuits and stops, and it noted that when there is more than one occupant in a vehicle, "the possible sources of harm to the officer" are increased. Id. On the personal liberty side of the balance, the Court considered that passengers might have a stronger liberty

---

[3]In Mimms, the Court adopted a bright-line rule that a police officer may order the *driver* of a lawfully stopped car to exit the vehicle.

interest than drivers but noted, "[A]s a practical matter, the passengers are already stopped by virtue of the stop of the vehicle." Id. at 413–14; see also Brendlin v. California, 127 S. Ct. 2400, 2407 (2007) (holding that when a police officer makes a traffic stop, the passenger in the car, in addition to the driver, is seized because a reasonable passenger would not believe himself free to leave). "The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car." Wilson, 519 U.S. at 414. This intrusion on passengers is "minimal," according to the Court. Id. at 415.

The Court concluded that "as a matter of course," a police officer may order passengers of a lawfully stopped car "to get out of the car pending completion of the stop." Id. at 410, 415.[4] In reaching its decision, the Court found "guidance by analogy" in Michigan v. Summers, a case holding that police officers could order a person leaving a house to *reenter* the house and remain there while officers executed a search warrant. Wilson, 519 U.S. at 414 (citing Michigan v. Summers, 452 U.S. 692 (1981)). The Court invoked its statement in Summers that "'[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.'" Wilson, 519 U.S. at 414 (quoting Summers, 452 U.S. at 702–03).

We believe that the reasoning in Wilson and Summers applies with equal force to the situation before us, and we hold that Officer Uredi did not violate the Fourth Amendment when he ordered Sanders to reenter the car. When Officer Uredi stopped the car, he faced the same safety concerns discussed in Wilson. He was unassisted in a high-crime area, it was dark, and he was outnumbered by the occupants in the car. Officer Uredi testified that it is his usual practice at traffic stops to order all occupants to remain in the vehicle until the completion of the stop. He does this out of concern

---

[4]We have applied this rule in United States v. Beatty, 170 F.3d 811, 813 (8th Cir. 1999) and United States v. Coleman, 148 F.3d 897, 904 (8th Cir. 1999).

for his safety because he does not want "somebody [to] get . . . out of [his] sight." Tr. of Suppression Hr'g at 26. As in Wilson, the concerns for officer safety in this case were "weighty." 519 U.S. at 413.[5]

In contrast, the intrusion on Sanders's liberty interest was "minimal." Id. at 415. As a passenger in a car that was pulled over by police, Sanders was seized as soon as the car stopped. See Brendlin, 127 S. Ct. at 2407 (holding that a traffic stop results in a seizure of passengers because a reasonable passenger "would not expect a police officer to allow people to come and go freely from" the scene and because a passenger's "attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave"). By ordering Sanders to reenter the car, Officer Uredi simply reinstated the status quo; the only change in Sanders's circumstances was that he was inside of, rather than outside of, the stopped car. As soon as Sanders was back inside of the car, Officer Uredi approached and saw the pistol grip protruding from Sanders's pocket. Thus, the amount of time that Sanders was detained without reasonable suspicion that he had committed a crime was de minimis.[6] See Robinson, 455 F.3d at 834 ("We thus

_____

[5]We reject Sanders's argument that "[b]ecause the stop occurred in the parking lot of an apartment complex, rather than on the side of [a] road subject to heavy traffic, the public safety concerns are not as weighty." Br. for Appellant at 8. The Wilson Court considered a similar scenario: the danger to police officers arising from oncoming traffic is generally not present in the case of passengers. 519 U.S. at 413. The Court concluded, however, that the threat to officer safety remained a weighty concern because "the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer." Id.

[6]Sanders argues that a passenger who is prevented from leaving a car that has stopped at the passenger's final destination faces a greater intrusion on his personal liberties than a passenger (like the passenger in Wilson) who is ordered out of a car and who is free to either leave or to wait until the completion of the stop to continue his travel. See Wilson, 519 U.S. at 415 n.3 (expressing "no opinion" on whether "an officer may forcibly detain a passenger for the entire duration of the stop" because the

-5-

conclude that, even if a suspicionless seizure occurred during the period from the conclusion of the lawful traffic stop until the officers unquestionably had probable cause, it was a *de minimis* intrusion that did not constitute an unreasonable seizure within the meaning of the Fourth Amendment."). We find this minimal intrusion on Sanders's personal liberty far outweighed by the safety concerns of Officer Uredi. See Mimms, 434 U.S. at 111 ("What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."). As the Supreme Court recognized in Summers and Wilson when facing analogous facts, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Summers, 452 U.S. at 702–03, quoted in Wilson, 519 U.S. at 414.[7]

---

passenger there "was subjected to no detention based on the stopping of the car once he had left it"). While Sanders may be correct, we nonetheless conclude that Sanders's liberty interests were outweighed by the interest in Officer Uredi's safety when Officer Uredi ordered Sanders back into the car at the onset of the stop. We need not reach the more general question of whether an officer may detain a passenger for the duration of a stop without reasonable suspicion that the passenger is or was engaged in criminal activity.

[7]We note that our holding is consistent with the opinions of every other circuit to address this issue. See United States v. Williams, 419 F.3d 1029, 1034 (9th Cir.) ("We hold that under the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile . . . because the concerns for officer safety . . . and specifically the need for officers to exercise control . . . outweigh the marginal intrusion on the passenger's liberty interest."), cert. denied, 546 U.S. 1081 (2005); United States v. Clark, 337 F.3d 1282, 1288 (11th Cir. 2003) (holding that officer did not violate the Fourth Amendment when he ordered a passenger to reenter a car as a means of protecting the officer's safety while investigating a crime); United States v. Moorefield, 111 F.3d 10, 11 (3rd Cir. 1997) (holding that "police officers may constitutionally order occupants of cars to remain in the vehicle with their hands up in the air"); cf. Rogala v. District of Columbia, 161 F.3d 44, app. at 53 (D.C. Cir. 1998) (involving a passenger who did not attempt to leave the scene; summarily affirming and reprinting the district court's opinion, which held that "it follows from Maryland v. Wilson that a police officer has the power to reasonably control the

-6-

Because Officer Uredi's detention of Sanders was reasonable under the Fourth Amendment, the gun found in Sanders's pocket was not the product of an illegal search. Sanders's motion to suppress was properly denied. The judgment of the District Court is affirmed.

_____

situation by requiring a passenger to remain *in* a vehicle during a traffic stop"); see also United States v. Holt, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc) (stating in dictum that "during a routine traffic stop, an officer may . . . order the passengers to remain in the vehicle").