# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2860

———————

United States of America,     *

       *

      Plaintiff - Appellee,     *

       *    Appeal from the United States

      v.             *    District Court for the

       *    District of Minnesota.

Jeffery Lee Oliver,        *

       *

      Defendant - Appellant.     *

———————

Submitted: April 15, 2008
Filed: December 23, 2008

———————

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

———————

LOKEN, Chief Judge.

Jeffery Lee Oliver entered a conditional plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and now appeals the district court's[1] denial of his motion to suppress the firearm. Following two evidentiary suppression hearings, the district court ruled that Minnesota State Highway Patrol Officer Michael Engum made a valid late-night traffic stop and then

---

[1]The HONORABLE MICHAEL J. DAVIS, Chief Judge of the United States District Court for the District of Minnesota, adopting Reports and Recommendations of the HONORABLE RAYMOND L. ERICKSON, Chief United States Magistrate Judge for the District of Minnesota.

conducted a valid pat-down search of Oliver, the vehicle's passenger, and discovered the firearm. On appeal, Oliver renews his contention that the pat-down search violated his Fourth Amendment rights because Engum lacked reasonable suspicion to believe that Oliver was armed and dangerous. On that fact-intensive issue of law, we agree with the district court's conclusion. Oliver also argues that the search was invalid because Engum lacked reasonable suspicion that Oliver was engaged in criminal activity. We reject that contention because it was not timely raised in the district court and is without merit. Accordingly, we affirm.

**I.**

Many background facts are undisputed. To the extent Engum and Oliver gave differing accounts of their encounter at the suppression hearings, the district court credited Engum's version. Oliver does not challenge the court's findings of fact as clearly erroneous. See United States v. Taylor, 519 F.3d 832, 833-35 (8th Cir. 2008) (standard of review).

At approximately 11:45 p.m., Engum stopped a Ford Expedition near Bemidji, Minnesota, for traveling without a rear license plate. The Expedition did not immediately pull over when Engum activated his emergency lights, traveling some two hundred yards before pulling into a gas station. As Engum approached the driver's side, the driver threw a set of keys onto the roof. Engum observed two men in the front seats, the driver and passenger Oliver. Engum asked the driver for his license. The driver's hands were shaking as he handed over an instruction permit that authorizes an adult to operate a vehicle when accompanied by a licensed driver at least eighteen years old. Engum asked Oliver if he had a valid driver's license. Oliver said no and handed Engum an identification card from the Red Lake Band of Chippewa. Oliver appeared nervous and edgy and refused to make eye contact. Engum asked whether the vehicle was registered; neither occupant replied.

Engum returned to his vehicle and arranged for a custody tow, his usual practice when no occupant is a licensed driver. Before completing the paperwork, Engum walked back to the Expedition, asked the driver to exit, patted him down, and placed him in the back seat of the patrol car. Engum returned to the Expedition and told Oliver he could not remain in the vehicle because it would be towed and inventoried. Engum offered Oliver a ride to the Red Lake Reservation boundary, located some twenty-two miles from Bemidji. Oliver neither accepted nor refused.

Oliver then opened the passenger door to exit the vehicle. Engum noticed Oliver fidgeting with an item in the front pocket of his hooded sweatshirt. Engum testified that Oliver's look and body language as he exited made the hair rise on the back of Engum's neck. Engum told Oliver to place his hands on the vehicle for a pat-down search. Engum felt a hard object on Oliver's waistband. Oliver said it was a box of condoms and then attempted to break free. Engum brought Oliver to the ground. Another officer arrived to assist and subdued Oliver with a taser. The officers arrested Oliver for interfering with legal process and found a loaded handgun in his waistband. A subsequent search of the Expedition uncovered another loaded handgun near the front passenger seat. After waiving his Miranda rights, Oliver admitted he was a convicted felon.

## II.

In the district court, Oliver moved to suppress evidence seized after the pat-down search and his incriminating statements, arguing (i) that Engum lacked probable cause to stop the Expedition because there was a temporary vehicle registration sticker displayed in the vehicle's rear window, and (ii) that the pat-down search was invalid because Engum lacked reasonable suspicion that passenger Oliver was armed and dangerous. After an evidentiary hearing, Magistrate Judge Erickson issued a Report and Recommendation concluding that the traffic stop was valid because Engum could not identify the temporary permit in the tinted rear window, and that the pat-down

-3-

search was valid based upon Engum's reasonable suspicion that Oliver was armed and dangerous.

Oliver filed an objection to the Report and Recommendation, incorporating his prior memorandum and arguing that the evidence did not support a conclusion that Engum's pat down search was supported by reasonable suspicion that Oliver was armed and dangerous. One month later, new defense counsel filed a motion to supplement the record, arguing that police photographs would show that the temporary permit was visible to Engum. He also sought leave to file supplemental objections. The district court remanded the suppression motion to the magistrate judge, stating: "Instead of permitting Oliver to file supplemental objections, the Court remands this matter to the Chief Magistrate Judge to reopen the suppression hearing to permit admission of the two photographs and any necessary additional testimony."

On remand, Magistrate Judge Erickson held a second evidentiary hearing that he limited to testimony relating to the police photographs. After the hearing, Oliver filed a memorandum arguing for the first time the issue he raises on appeal -- that Engum could not conduct a pat-down search without reasonable suspicion that Oliver was both armed and dangerous *and* involved in criminal activity. Magistrate Judge Erickson issued a second Report and Recommendation, finding that the photographs did not impeach Engum's testimony that he could not see the temporary license through the tinted rear window and declining to address other issues because they were previously resolved, "explicitly, or implicitly." Oliver objected to this Report, again arguing that Engum lacked probable cause for the traffic stop and incorporating all prior motions and memoranda. The district court adopted Magistrate Judge Erickson's two Reports and Recommendations without addressing the additional issue Oliver urges on appeal.

**III.**

On appeal, Oliver contends that the district court applied the wrong legal standard in upholding the pat-down search. Citing Terry v. Ohio, 392 U.S. 1, 27-30 (1968), he argues that, as the passenger of a vehicle validly stopped for a traffic violation, he could not be detained and searched absent reasonable suspicion that he was involved in "criminal activity" *and* that he was armed and dangerous. He concedes, as he must, that a vehicle's passenger, as well as its driver, is seized during a valid traffic stop. Brendlin v. California, 127 S. Ct. 2400, 2403-08 (2007). He concedes, as he must, that both the driver and passenger may be ordered to exit the vehicle in the interests of officer safety. Maryland v. Wilson, 519 U.S. 408, 413-15 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977). And he acknowledges that the Supreme Court addressed this issue when it observed that, during a routine traffic stop, police officers "may order out of a vehicle both the driver and any passengers [and] perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." Knowles v. Iowa, 525 U.S. 113, 118 (1998) (citing Mimms, Wilson, and Terry). However, he argues, that passage in Knowles was erroneous dicta insofar as it included pat-down searches of passengers not reasonably suspected of other criminal activity.

The above-quoted passage in Knowles may be dicta, but it is explicit dicta directly on point that we may not ignore. Moreover, the statement that passengers may be searched during a traffic stop based upon reasonable suspicion they may be armed and dangerous is consistent with prior decisions of this court, see United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006); United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996); United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991), and with the decisions of other circuits, see United States v. Soares, 521 F.3d 117, 118-22 (1st Cir. 2008); United States v. Rice, 483 F.3d 1079, 1082-85 (10th Cir. 2007); United States v. Moorefield, 111 F.3d 10, 13-14 (3d Cir. 1997) (collecting cases). As a panel, we are bound by these prior Eighth Circuit decisions.

There is one aspect of this problem that may not be governed by our prior cases. When an officer completes a routine traffic stop and decides to let the offending driver depart with a ticket, a warning, or an all clear, "then the Fourth Amendment applies to limit any subsequent detention or search." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647-49 (8th Cir. 1999), cert. denied, 528 U.S. 1161 (2000). Arguably, therefore, if an officer authorizes a passenger to leave the scene before a traffic stop is completed and then initiates an unrelated investigative inquiry, a pat-down search of the departing passenger must be justified by consent or by reasonable suspicion of criminal activity, even if the officer comes to believe the passenger may be armed and dangerous.

This was the basis for the decision to suppress evidence by a divided court in State v. Johnson, 170 P.3d 667, 673 (Ariz. App. 2007), a decision now under review by the Supreme Court, cert. granted, Arizona v. Johnson, 128 S. Ct. 2961 (2008). Even in these circumstances, the situation is fraught with risks to officer safety. Here, for example, if Oliver was armed and dangerous and Engum let him depart without a pat-down search, Oliver could have turned and shot the officer to prevent imminent discovery of the other firearm still in the Expedition. But in any event, Oliver's untimely raising of this Terry issue in the district court leaves us without findings needed to resolve this aspect of the problem. On this record, it is undisputed that, because there was probable cause to tow the vehicle, the traffic stop was not completed when Engum ordered Oliver to exit the vehicle. Thus, the traffic stop was still at a point where "the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." United States v. Sanders, 510 F.3d 788, 790 (8th Cir. 2007), quoting Wilson, 519 U.S. at 414. Therefore, no reasonable suspicion of unrelated criminal activity was required to justify the pat-down search so long as Engum had reasonable suspicion that Oliver may be armed and dangerous.

## IV.

Oliver further argues, as he did in the district court, that the pat-down search violated his Fourth Amendment rights because Engum lacked reasonable suspicion that Oliver was armed and dangerous. We review this mixed question of law and fact *de novo*. United States v. Roggeman, 279 F.3d 573, 577 (8th Cir. 2002). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.

The district court concluded that several circumstances gave Officer Engum reasonable suspicion that Oliver may be armed and dangerous, justifying the pat-down search:

> the pat-down search was conducted during the course of a traffic stop; it occurred late at night; the vehicle had failed to stop upon Engum's activation of his emergency lights; when Engum had approached the Expedition, the driver had thrown his keys onto the roof of the vehicle which, according to Engum, was highly unusual; the hands of the vehicle's driver were visibly shaking, and [Oliver] appeared to be avoiding all eye contact with Engum; [Oliver] was fidgeting with the front pocket of his hooded sweatshirt, which appeared to be concealing something; and [Oliver's] body language was such that it made the hair on the back of Engum's neck stand.

(Citations omitted.) After careful review of the record, we agree with this conclusion. See Menard, 95 F.3d at 11 ("The Supreme Court has frequently noted the inherent danger traffic stops pose to police officers and the consequent likelihood that minimally intrusive weapons searches will be reasonable.").

The judgment of the district court is affirmed.

_____