# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1292
_____

United States of America

*Plaintiff - Appellee*

v.

Eric E. Davison

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 25, 2015
Filed: December 8, 2015
_____

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.
_____

LOKEN, Circuit Judge.

Kansas City, Missouri, Police Officer Chad Pickens discovered a loaded firearm during a stop and frisk of Eric Davison. Charged with being a felon in possession of a firearm, Davison conditionally pleaded guilty and now appeals the denial of his motion to suppress. He argues police violated his Fourth Amendment rights in seizing the firearm because Officer Pickens lacked reasonable suspicion to make an investigative stop and to conduct a protective frisk for weapons. We affirm.

# I. Background.

We recite the facts as found by the district court[1] after a suppression hearing at which only Officer Pickens testified. At about 1:00 p.m. on November 25, 2013, the owners of a store located at Ninth Street and Tracy Avenue reported to police that two occupants of a pickup truck had been doing "donuts" in their parking lot, then parked the truck in their lot and walked north on Tracy. Police dispatch discovered the truck had been reported stolen and relayed this information to officers in the area. Officer Pickens and his partner were in the area investigating a homicide.

Pickens drove to the lot where the stolen truck was parked to see if the two occupants would return and called the store owners to gather more information. The owners reported that the occupants of the truck were a white female in a dark coat and a white or Hispanic male. After a few minutes of surveillance from a nearby alley, Pickens decided to drive around the neighborhood to look for individuals fitting this description. Turning north on Tracy, Pickens saw two individuals walking south who matched the store owners' description, later identified as Davison and Kelly Hall. Davison and Hall saw the police car, avoided eye contact with the officers, and changed their route, walking west on Eighth Street. Suspicions, but having only a limited description, Pickens decided to canvass the area, looking for others who matched the description. He drove past a nearby soup kitchen where a large crowd of people had gathered; none matched the store owners' description.

Officer Pickens then turned south on the street one block east of Tracy, where he again observed the suspects, now walking north. He considered stopping the pair to ask why they were walking in a circle but decided to observe further behavior.

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

Driving around the block twice more, Pickens became certain the suspects knew they were being watched by police -- they never broke stride, repeatedly glanced at the officers before quickly averting their eyes, and appeared "deflated" because they were about to be stopped. When Pickens saw the suspects walk through the yard of a residence he knew was a "drug house,"[2] he decided to stop and question them about the stolen vehicle and what they were doing in a high-crime area.

Davison and Hall cooperated when stopped, but Officer Pickens immediately frisked Davison for weapons, and his partner frisked Hall, before questioning the pair. Pickens felt an object consistent with a firearm in the right breast pocket of Davison's coat. When Davison said, "I'm so stupid," Pickens asked if Davison was a felon. He admitted a prior conviction and release from prison four months earlier. Pickens arrested Davison and conducted a search incident to the arrest which revealed a loaded .22 caliber revolver, a box of .22 caliber ammunition, a small amount of methamphetamine, and a syringe containing a clear liquid.

At the suppression hearing, Officer Pickens testified that he was a thirteen-year veteran of the Kansas City Police Department who had performed numerous investigations and surveillances in high-crime areas. He was aware of shootings in the area near Ninth and Tracy in the prior few months, one of which had targeted police. Pickens testified he decided to stop Davison and Hall because:

> they're walking in circles, attempting to avoid contact with police, cutting across a private residence, limitedly matched the description of the two people that exited the stolen auto. So, we're going to stop them. We're going to see what their business is in the area and . . . begin an investigation on what they're doing there.

---

[2]Officer Pickens had previously arrested the owner of the house for possession of methamphetamine. He also knew other officers had conducted a warrant search after a controlled buy at the house.

Pickens testified it was "absolutely necessary" to frisk Davison and Hall for weapons given the past high-crime in the neighborhood and narcotics activity at the private residence, the recent shooting at police, and the suspects' evasive behavior. He testified that he frisked Davison before questioning the pair because, "if I feel like I've generated enough reasonable suspicion to execute a frisk, then I'm going to generally do that before [questioning] because the whole premise of the frisk is to make sure that we're in a safe environment to conduct . . . the investigation."

The district court denied Davison's motion to suppress, concluding that "[t]he totality of these circumstances constitute reasonable suspicion for a Terry stop," and that Pickens had reasonable suspicion to conduct a protective frisk for weapons because he suspected Davison had stolen a truck, and Davison avoided eye contact with police when encountered in a high-crime area.

## II. Discussion.

A police officer may briefly stop an individual to make reasonable inquiries when the officer "has reasonable suspicion that criminal activity may be afoot." United States v. Hughes, 517 F.3d 1013, 1016 (8th Cir. 2008), citing Terry v. Ohio, 392 U.S. 1, 30 (1968). In conducting a Terry stop, the officer may make a protective pat-down search "if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." United States v. Roggeman, 279 F.3d 573, 577 (8th Cir. 2002), citing Terry, 392 U.S. at 30. Davison argues that his Fourth Amendment rights were violated because Officer Pickens lacked reasonable suspicion to make an investigatory stop and to frisk Davison for weapons; therefore, all evidence obtained from the illegal stop and frisk must be suppressed. We review determinations of reasonable suspicion *de novo*, "tak[ing] care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996).

-4-

**A. The Stop.** The government concedes that Officer Pickens conducted a Terry stop of Davison and Hall; it was not merely a consensual encounter to which Fourth Amendment protections typically do not apply. See United States v. Jones, 606 F.3d 964, 965 (8th Cir. 2010). To justify a Terry stop, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. A reviewing court must look at the totality of the circumstances, allowing "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002). Innocent actions can give rise to reasonable suspicion when considered as part of the totality of the circumstances. United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995).

Officer Pickens was dispatched to investigate persons seen operating a stolen truck. Davison argues that, when stopped, he "was merely walking around a city block, on the public sidewalk, with a companion," which is completely innocuous behavior. Therefore, Pickens should have used less-intrusive investigative methods, such as continued observation or a consensual encounter. However, Pickens did conduct substantial surveillance before deciding to stop and question the only suspects he saw walking nearby, including canvassing the area to see if other people matched the store owners' description. We agree with the district court that, when he made the Terry stop, Pickens had a sufficient basis to reasonably suspect Davison and Hall of criminal activity because (1) they matched the description of persons who had recently operated a stolen truck; (2) they appeared to be walking in a circle near the stolen truck in a high-crime neighborhood, aware police were watching but avoiding eye contact, actions suggesting they were trying to avoid police contact; and (3) their evasive path had taken them through the yard of a known drug house. Pickens provided specific and articulable facts, together with rational inferences he made from those facts, that gave him reasonable suspicion to stop Davison and Hall to question them about the stolen truck.

**B. The Frisk.** Officer Pickens testified that he frisked Davison before questioning the suspects for reasons of officer safety. "In the case of the self-protective search for weapons, [an officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64 (1968). The "sole justification" for frisking a suspect is the protection and safety of the officers and others. Roggeman, 279 F.3d at 577, quoting Terry, 392 U.S. at 29. Again, the totality of the circumstances is the touchstone of our analysis -- facts such as the time of day, the suspects' location, and their behavior when they become aware of the officer's presence, considered together with the inferences and deductions made by the officer. See, e.g., United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005).

Officer Pickens testified that he believed it was "absolutely necessary" to frisk Davison before questioning Davison and Hall. We agree with the district court that the particular facts of this case gave Pickens reasonable suspicion that Davison was armed and dangerous. First and foremost, Pickens reasonably suspected that Davison had stolen a truck. "[W]hen officers encounter suspected car thieves, they also may reasonably suspect that such individuals 'might possess weapons.'" United States v. Hanlon, 401 F.3d 926, 929 (8th Cir. 2005), quoting United States v. Rowland, 341 F.3d 774, 784 (8th Cir. 2003). In addition, Pickens stopped Davison and Hall after observing them walk through the yard of a known drug house in a high-crime area where recent shootings had occurred, including one that targeted police officers.

Given the totality of the circumstances present in this record, the district court did not err in concluding that Officer Pickens had reasonable suspicion to conduct the stop and frisk and therefore denying Davison's motion to suppress. Accordingly, the judgment of the district court is affirmed.

_____