# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2590

_____

United States of America

*Plaintiff - Appellant*

v.

Kaylo Oneal Roelandt

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 14, 2016
Filed: June 30, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A police officer stopped and frisked Kaylo Oneal Roelandt. Finding a gun in his pocket, the officer arrested him for being a felon in possession of a firearm. *See* **18 U.S.C. §§ 922(g)(1), 924(a)(2)**. Roelandt moved to suppress evidence of the gun, arguing the officer had no reasonable suspicion to stop him. The district court suppressed the evidence. The United States appeals. Having jurisdiction under 18 U.S.C. § 3731, this court reverses and remands.

On a December night, Roelandt was walking at a very fast pace through a high-crime area toward his home (known to police). It was cold; he was wearing a hooded sweatshirt with the hood up. His hands were in his sweatshirt pockets. He was continually looking around ("his head looked like it was on a swivel"). Seeing this "odd," "extremely nervous" behavior, Officer Bryan Butt circled the block. He looked directly at Roelandt, recognizing him as a convicted felon and "hard core" member of the Savage Life gang. (Officer Butt, a member of the street crimes unit, participated in "gang intelligence gathering.") He knew that about three months before, a confidential informant told police that Roelandt was carrying a gun. He also knew that about an hour or two earlier, another member of the gang (and close friend of Roelandt) sustained a gunshot wound and was admitted to a hospital about three miles away. Officer Butt did not know any other details.

Because Officer Butt was in plainclothes and an unmarked car, he asked Officer Jarrad Cockshoot (in uniform and a marked car) to come find Roelandt and perform a pedestrian stop. Finding Roelandt, Officer Cockshoot stopped his car in the middle of the street, quickly exited, and walked toward Roelandt saying, "What's up man" and asking, "Can you pull your hands out of your pockets for me?" Roelandt complied. Asked where he was going, Roelandt replied, "To the crib." Officer Cockshoot saw Roelandt's hand expand and narrow as he pulled his hand out of his pocket. He put Roelandt's hands behind his back, patted him down, and felt a hard object in his pocket—a loaded 9mm pistol.

This court reviews de novo the district court's determination of reasonable suspicion and its findings of fact for clear error, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *United States v. Jones*, 606 F.3d 964, 966 (8th Cir. 2010).

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that

criminal activity is afoot." ***United States v. Cornelius***, 391 F.3d 965, 967 (8th Cir. 2004), *quoting **Illinois v. Wardlow***, 528 U.S. 119, 123 (2000). "After a suspect is lawfully stopped, an officer may in some circumstances conduct a pat-down search for weapons" if the officer has "reasonable, articulable suspicion that the suspect is armed and dangerous." ***United States v. Trogdon*** , 789 F.3d 907, 910 (8th Cir. 2015). This court examines "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." ***United States v. Arvizu***, 534 U.S. 266, 273 (2002). Even "a series of acts, each of them perhaps innocent in itself," "taken together," may warrant further investigation. ***Terry v. Ohio***, 392 U.S. 1, 22 (1968).

Roelandt claims that his conduct was wholly innocent, and the information about his associate being shot had nothing to do with him. Officer Butt agreed that Roelandt's clothing, hands in his sweatshirt pockets, and fast pace were consistent with the weather. However, he testified Roelandt's nervous behavior was suspicious because of his quick pace and his constant looking around. Officer Cockshoot, aware that Roelandt and the associate shot were "close friends," testified about the retaliatory shootings between rival gangs, saying, "If there's a shooting from one side, it's going to be within a week or so."

The totality of the circumstances support the officer's reasonable suspicion that Roelandt was engaged in the criminal activity of possessing a firearm. A known felon and gang member, he was walking quickly through a high-crime area and suspiciously looking around. *See **United States v. Stewart***, 631 F.3d 453, 457-58 (8th Cir. 2011) (defendant's presence at night in a high-crime area supported reasonable suspicion). Both officers were familiar with past reports that Roelandt had a gun. ***Id.*** (defendant's prior felony conviction and history of violent behavior supported reasonable suspicion). A fellow gang member, and close friend, was admitted to the hospital with a gunshot wound just hours before. *See **Cornelius***, 391 F.3d 965, 967 (8th Cir. 2004) (considering, on reasonable suspicion to stop, officers' knowledge of

defendant's gang and narcotics affiliations).  Although the officers did not know the details of the shooting, they knew gang members often engaged in retaliatory shootings.  *See United States v. Cortez*, 449 U.S. 411, 418 (1981) (explaining that when assessing the totality of the circumstances, police may rely on "information from police reports, if such are available, and consideration of the modes or patterns of operation of certain  kinds of lawbreakers"); *United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995) ("Knowledge of gang association and recent relevant criminal conduct, while of doubtful *evidentiary* value in view of the strictures against proving guilt by association or by a predisposition based on past criminal acts, is a permissible component of the articulable suspicion required for a *Terry* stop.").

The act of occasionally looking around, accompanied only by conduct typical of a broad category of innocent people, may not indicate criminal activity.  *See Reid v. Georgia*, 448 U.S. 438, 441 (1980); *United States v. Crawford*, 891 F.2d 680, 681 (8th Cir. 1989).  Roelandt invokes the *Jones* case, where this court disapproved of a stop where  "too many people fit this description for it to justify a reasonable suspicion of criminal activity." *Jones*, 606 F.3d at 967 (brackets omitted). However, although Roelandt's immediate acts are like Jones's acts, the police here also knew of Roelandt's criminal history, his gang affiliation, the local pattern of retaliatory gang shootings, and the shooting of his close associate that very evening.  Roelandt's acts, although largely "consistent with innocent behavior," when taken together with all of the facts and circumstances known to the officers, "[gave] rise to reasonable suspicion."  *See Stewart*, 631 F.3d at 457.  *See also Arvizu*, 534 U.S. at 275-76 (recognizing judicial reasonable-suspicion review must consider an officer's assessment of the situation in light of training and familiarity with the customs of the area's inhabitants;  "a totality of the circumstances approach may render appellate review less circumscribed by precedent than otherwise").

\* \* \* \* \* \* \*

The district court's grant of Roelandt's motion to suppress is reversed, and the case remanded for further proceedings consistent with this opinion.

_____