# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1959

_____

United States of America

*Plaintiff - Appellee*

v.

Nathaniel Taylor Matlock

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: December 14, 2017
Filed: February 9, 2018
[Unpublished]

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

PER CURIAM.

Nathaniel Matlock pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), reserving his right to appeal the district court's[1] denial of his motion to suppress evidence. We affirm.

On July 24, 2016, Officer Troy Wilson of the Waterloo Police Department's Violent Crime Apprehension Team was patrolling the streets of Waterloo, Iowa, in his squad car. At approximately 8:00 p.m., Officer Wilson initiated a traffic stop after observing a vehicle's malfunctioning rear brake light. Three other officers arrived to assist with the stop.

Four people occupied the stopped vehicle. The driver's license was revoked and suspended, the front-seat passenger's license was suspended, and the back-seat passengers, one of whom was Matlock, had only Iowa identification cards, not licenses. Officer Wilson initially could not specifically identify the back seat passengers because of the vehicle's tinted windows, but upon viewing Matlock's identification card he recognized him as a person who had previously been reported to carry a firearm. Because no one in the vehicle was a legally licensed driver and the vehicle was not insured, Officer Wilson ultimately decided to have the vehicle towed and asked the occupants to exit the vehicle.

When Matlock stepped out of the vehicle, Officer Wilson asked him to put his hands on the vehicle so that Wilson could conduct a pat-down search. Matlock responded by saying, "For what? I'm just a passenger." Officer Wilson again told Matlock to put his hands up, at which point Matlock complied. Although Matlock's hands were not trembling, Wilson believed that Matlock's hesitation to comply

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, adopting the report and recommendation of the Honorable Jon S. Scoles, United States Chief Magistrate Judge for the Northern District of Iowa.

suggested nervousness. During the search, Wilson discovered a .40 caliber handgun in Matlock's waistband and a pocketknife in his pocket.

Upon being indicted, Matlock moved to suppress the firearm. Officer Wilson testified at the suppression hearing that he knew of Matlock's "violent tendencies and . . . firearm violence" because of three previous incidents, one of which was a report that in May 2016, Matlock had allegedly exited a vehicle, brandished and cocked a gun, and continued to display it until police were called. In March 2016, Officer Wilson had responded to a shots-fired call, during which it was reported that Matlock was the passenger in a vehicle from which shots were being fired. Officer Wilson also knew of a police report that Matlock had been involved in a March 2014 shots-fired call.

Officer Wilson further testified that although Matlock associates with the Black Flag Mafia gang, the traffic stop occurred in a rival gang's neighborhood. According to Officer Wilson, the neighborhood is "plagued with gun violence," and police had responded to a nearby homicide a week prior to the traffic stop. Tr. 16. Additionally, the block where the vehicle was stopped had been the location of numerous fights and shots-fired calls.

In light of these circumstances, the magistrate judge concluded that Officer Wilson had reasonable suspicion to search Matlock and that his actions thus did not violate the Fourth Amendment. The district court adopted the magistrate judge's report and recommendation and denied the motion to suppress. Following the entry of his guilty plea, the district court sentenced Matlock to 78 months' imprisonment.

Matlock argues that the district court erred in denying his motion to suppress, contending that Officer Wilson lacked reasonable suspicion to conduct the search. We review *"de novo* the district court's determination of reasonable suspicion and its

findings of fact for clear error." United States v. Roelandt, 827 F.3d 746, 748 (8th Cir. 2016).

The Supreme Court has upheld a pat-down search as permissible if two conditions are met: (1) "the investigatory stop must be lawful," and (2) the "officer must reasonably suspect that the person stopped is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 326 (2009). "'The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" United States v. Oliver, 550 F.3d 734, 739 (8th Cir. 2008) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). To determine reasonableness, we analyze the totality of the circumstances, "allowing 'officers to draw on their own experience and specialized training.'" United States v. Davison, 808 F.3d 325, 329 (8th Cir. 2015) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Matlock does not challenge the lawfulness of the initial traffic stop. He also acknowledges that an officer may lawfully order a passenger to exit a vehicle to perform a pat-down search if the officer reasonably believes that the passenger is armed and dangerous. See Oliver, 550 F.3d at 737 (quoting Knowles v. Iowa, 525 U.S. 113, 118 (1998) (stating that the law permits an officer to "perform a 'pat-down' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous")); see also Johnson, 555 U.S. at 783 (noting that "[a] passenger's motivation to use violence during [a traffic] stop to prevent apprehension for a crime more grave than a traffic violation is just as great as that of the driver").

We conclude that Officer Wilson had reasonable suspicion to believe that Matlock may have been armed and dangerous. As recounted above, the traffic stop was initiated in an area "plagued with gun violence." See Roelandt, 827 F.3d at 748 (citing United States v. Stewart, 631 F.3d 453, 457 (8th Cir. 2011) (defendant's presence in a high-crime area supported reasonable suspicion). Officer Wilson

recognized Matlock from previous incidents allegedly involving firearms, including an incident that had occurred just two months before the pat-down search. See id. (officer's familiarity with past reports that the defendant possessed a gun supported reasonable suspicion). He was also aware that while Matlock associated with the Black Flag Mafia gang, he was stopped in a rival gang's neighborhood. See id. at 749 (citing United States v. Cornelius, 391 F.3d 965, 967 (8th Cir. 2004)) (officer's knowledge of defendant's gang affiliation supported reasonable suspicion); see also id. (citing United States v. Feliciano, 45 F.3d 1070, 1074 (7th Cir. 1995) ("Knowledge of gang association and recent relevant criminal conduct . . . is a permissible component of the articulable suspicion required for a [pat-down search]."). Officer Wilson also believed that Matlock's failure to immediately comply with Wilson's order to place his hands on the vehicle reflected nervousness on his part. See United States v. Morgan, 729 F.3d 1086, 1090 (8th Cir. 2013) (defendant's failure to comply with officer's order to remove his hands from under the seat when first ordered to do so supported reasonable suspicion).

We need also recognize that a situation of this nature is "fraught with risks to officer safety." Oliver, 550 F.3d at 738. Because the car was being towed, Matlock and the other passengers were required to exit the vehicle. An officer is "not constitutionally required to give [a passenger] an opportunity to depart the scene after he exited the vehicle without first ensuring that, in so doing, [the officer] was not permitting a dangerous person to get behind [him]." Johnson, 555 U.S. at 334. The traffic stop was therefore "still at a point where the 'risk of harm to both the police and the occupants is minimized if the officers exercise unquestioned command of the situation.'" Oliver, 550 F.3d at 738 (quoting United States v. Sanders, 510 F.3d 788, 790 (8th Cir. 2007)).

The judgment is affirmed.

_____