# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3735

_____

United States of America

*Plaintiff - Appellee*

v.

Terrance S. Harvey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 15, 2021
Filed: June 11, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

After entering a conditional plea of guilty to a felon-in-possession violation of 18 U.S.C. § 922(g), Terrance Harvey appeals the denial of his motion to suppress. See Fed. R. Crim. P. 11(a)(2). The issues turn on whether police had reasonable suspicion to stop Harvey and his companion and to conduct a protective pat down search for weapons. "We review determinations of reasonable suspicion *de novo*, taking care both to review findings of historical fact only for clear error and to give

due weight to inferences drawn from those facts by . . . local law enforcement officers." United States v. Davison, 808 F.3d 325, 329 (8th Cir. 2015), quoting Ornelas v. United States, 517 U.S. 690, 699 (1996). We affirm.

## I.

We recite the facts as found by the district court[1] after a suppression hearing at which the only witness was Gordon Abraham, Chief of Police of Pleasant Valley, Missouri, a town northeast of Kansas City. On September 4, 2018, Kyle Gabauer and Tiffani Miller were at the home of Sharon McKinzie at 6308 Ravenna Road. After they left, McKinzie had difficulty finding her car keys. When she found the keys and looked in the vehicle, McKinzie discovered two handguns were missing. Gabauer and Miller returned to the residence on September 5, and a physical altercation ensued. McKinzie called the police. When they arrived, Gabauer and Miller were gone. McKinzie told police she believed Gabauer had stolen two handguns that she described. Police officers including Chief Abraham searched the area but did not find Gabauer or Miller. Gabauer was arrested on September 6 and booked for an unrelated attempted burglary at a location between the McKinzie residence and a nearby Phillips 66 gas station that was out of business.

McKinzie again called police on September 7 and told responding officers that Gabauer and a Hispanic male wearing dark clothing had come to her house and left on foot. She called the police because she did not want them there. She believed Gabauer had been given a no-trespass warning, but the police learned no trespass warning had been given. Monitoring this call, Chief Abraham issued a radio alert for

---

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable Lajuana M. Counts, United States Magistrate Judge for the Western District of Missouri.

an area check, reporting a disturbance at the McKinizie home, a previous disturbance there that involved stolen firearms, and the subjects were possibly armed.

Chief Abraham responded to the area and began searching for the two men. Five minutes after the 911 call, Police Officer Brooks radioed that he observed two men wearing dark clothing walking across the lot of the Phillips 66 gas station, less than two blocks from the McKinzie residence. Chief Abraham was nearby, saw the two men, and pulled into the gas station parking lot. He testified that he exited his vehicle, identified himself, advised the men to show their hands, and said he was going to pat them down. He believed they were possibly armed because one of the men was Gabauer who was allegedly involved in the recent theft of two firearms from the McKinzie residence. Abraham had a general description of Gabauer but did not know what he looked like; the two men were similar in race, age, size, and clothing.

Before conducting a pat down, Chief Abraham asked the men if they were armed. One -- later identified as Harvey -- said he had a gun in his front pocket. Chief Abraham retrieved the firearm, a Taurus, Model 85, .38 caliber revolver that Harvey was later charged with unlawfully possessing. Officer Brooks contacted the McKenzie residence. One resident came to the parking lot with paperwork confirming that the Taurus revolver was one of the stolen firearms. A third officer frisked the second man, -- later identified as Gabauer -- finding a pellet gun that resembled a handgun. After dispatch advised Chief Abraham that Harvey had outstanding warrants and that both men were felons, Harvey and Gabauer were arrested for theft and unlawful possession.

Harvey was indicted for unlawful possession of the Taurus firearm in violation of 18 U.S.C. § 922(g). He filed a motion to suppress the firearm and statements he made to police about the firearm, alleging police lacked reasonable suspicion for a

Terry[2] stop and frisk. Asked on direct and cross exam at the hearing why he stopped the two men and said he would pat them down, Chief Abraham explained that he believed one of the two men was Gabauer; that he wanted to serve a no trespassing notice on Gabauer because he had been involved in a prior disturbance at the McKinzie residence and the residents did not want him there; and that Gabauer was a suspect in the recent theft of firearms at the residence.

The Magistrate Judge issued a Report and Recommendation that the motion to suppress be denied. Regarding the investigative Terry stop, the court "finds that Chief Abraham had a reasonable, articulable suspicion that criminal activity may be afoot given the allegations that Gabauer was involved in the theft of two firearms from 6308 Ravena on September 4, an altercation with the residents of 6308 Ravena on September 5, an arrest for attempted first-degree burglary at a nearby location of September 6, and an unwelcome return to 6308 Ravena on September 7, which resulted in another 911 call." Regarding the frisk, the court found that Chief Abraham "had a credible concern for officer safety" because this series of events gave the officers "reason to believe that one or both of the subjects might be armed and dangerous." The district court adopted the Report and Recommendation and denied the motion suppress. Harvey then entered a conditional guilty plea. The district court sentenced him to 63 months imprisonment.

## II.

On appeal, Harvey argues the district court erred in denying his motion to suppress because the police "had no objective basis to believe he was engaged in criminal activity or was armed and dangerous." "A police officer may briefly stop an individual to make reasonable inquiries when the officer has reasonable suspicion that criminal activity may be afoot." Davison, 808 F.3d at 329, citing Terry, 392 U.S. at

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

30. "The officer may make a protective pat-down search if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." <u>Id.</u>, citing <u>Terry</u>, 392 U.S. at 30.

A.The Stop. As the district court recognized, a <u>Terry</u> stop is justified only when the officer points to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Id.</u>, citing <u>Terry</u>, 392 U.S. at 21. "A reviewing court must look at the totality of the circumstances, allowing officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." <u>Id.</u>, citing <u>United States v. Arvizu</u>, 532 U.S. 266, 273 (2002).

Harvey argues the police had no reasonable suspicion because (i) no crime occurred while he and Gabauer were at the McKinizie residence on September 7; (ii) even if he and Gabauer were trespassing at the McKinzie residence, a completed trespass cannot give rise to reasonable suspicion, citing <u>United States v. Hughes</u>, 517 F.3d 1013 (8th Cir. 2008); (iii) any suspicion that Gabauer was involved in stealing firearms on September 4 dissipated when he was arrested for an unrelated attempted-burglary and released on September 6; and (iv) even if police had reasonable suspicion to stop Gabauer, they did not have reasonable suspicion to stop Harvey. These arguments disregard the governing Fourth Amendment standard:

> The fatal flaw in [Harvey's] approach is that he challenges the sufficiency of each [reasonable suspicion] factor in isolation from the rest. The totality-of-the-circumstances test 'precludes this sort of divide and conquer analysis.' An officer may have reasonable suspicion to conduct a <u>Terry</u> stop based on a combination of factors even where no single factor, considered alone, would justify a stop.

United States v. Quinn, 812 F.3d 694, 698 (8th Cir. 2016) (quotations and citations omitted). Here, Chief Abraham explained he had several reasons to stop Gabauer: (1) Gabauer had been involved in a prior physical altercation at the McKinzie residence, (2) Gabauer was suspected of recently stealing firearms at that residence, and (3) Abraham wanted to give Gabauer a no trespass warning that he was not wanted at that residence.

Turning to Harvey's specific arguments, the fact that Chief Abraham had no reason to suspect that Harvey and Gabauer committed a crime at the McKinizie residence on September 7 is of little if any relevance. It is well settled "that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion." United States v. Hensley, 469 U.S. 221, 229 (1985). Abraham had reason to suspect Gabauer committed a felony on September 4, stealing two firearms at that residence. The fact that Gabauer was booked and released on September 6 for another felony, attempted burglary at a nearby location, did not "dissipate" Abraham's reasonable suspicion to stop Gabauer for brief investigative inquiry; two felonies in three days provided increased reason to investigate a common suspect. Harvey cites no authority for the proposition that an arrest for an unrelated crime dissipates suspicion about that individual's involvement in a prior crime in the same vicinity.

Harvey's focus on the trespass aspect of this incident is likewise out of focus. In Hughes, we concluded that an "an anonymous complaint" about "suspicious parties on the property," standing alone, did not justify stopping and frisking three individuals at a public bus stop. 517 F.3d at 1015, 1017-1019. But Chief Abraham did not stop Gabauer for having completed a trespassing crime. He stopped Gabauer to serve a trespass warning on a person who had just made a third unwelcome visit to a residence in four days, resulting in a reported theft, a physical altercation the next day, two prior 911 calls to the police, and the residents stating they did not want him

there. Under Missouri law, first degree trespass requires proof of prior notice, see Mo. Rev. Stat. § 569.140, and an officer's oral warning, if ignored, can establish probable cause for a later arrest. See State v. Hogue, 501 S.W.3d 53, 56-57 (Mo. App. 2016); cf. United States v. Hawkins, 830 F.3d 742, 746 (8th Cir. 2016). Thus, Chief Abraham's reasonable basis to serve Gabauer a trespass notice added to the totality of circumstances making the Terry stop reasonable. Hughes is not to the contrary. See 517 F.3d at 1018.

Harvey's contention that Chief Abraham had no suspicion to stop him even if the stop of Gabauer was warranted is without merit. "The simultaneous stopping of multiple suspects for a one-person crime may sometimes be justified by the virtual certainty that the perpetrator is a member of that group and that means of singling him out will soon be available." United States v. Sykes, 914 F.3d 615, 618 (8th Cir.) (quotations omitted), cert. denied, 140 S. Ct. 136 (2019).

B. The Frisk. Harvey argues that Chief Abraham had no reasonable suspicion that Harvey was armed and dangerous. Like the district court, we disagree. "In the case of the self-protective search for weapons, an officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Davison, 808 F.3d at 330. Here, as previously discussed, police suspected Gabauer had stolen two firearms from the McKinzie residence three days prior to the Terry stop. Abraham also knew that Gabauer was involved in a physical altercation when he returned to that residence the next day, was suspected of an attempted-burglary at a near-by residence the following day, and made an unwelcome return to the same residence that prompted the stop. In reviewing the totality of these circumstances, we must allow Abraham, an officer with forty years experience, to draw on this experience and training to make inferences from and deductions about whether there was reasonable suspicion that one or both of these suspects may be armed and dangerous.

Moreover, Chief Abraham did not simply conduct a physical frisk or pat down search. He first asked Harvey and Gabauer if they were armed. Harvey admitted he was, and Abraham, without a frisk or pat down, retrieved the firearm Harvey was subsequently charged with unlawfully possessing. In the district court, Harvey also challenged the subsequent frisk of both men and their arrest after police ascertained that Harvey had outstanding warrants and both men were felons. But the district court's rejection of these challenges is not at issue on appeal.

For the foregoing reasons, the district court properly denied Harvey's motion to suppress. Accordingly, the judgment of the district court is affirmed.

_____